STATE of Missouri, Respondent,

v.

Denise WEBB, Appellant.

No. WD33109.

Missouri Court of Appeals, Western District.

Feb. 1, 1983.

H. George Lafferty, Jr., Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Denise Webb was found guilty by a jury of violating § 195.200.1 by possessing phencyclidine, a Schedule II controlled substance.[1] The jury assessed punishment at six months in the county jail, and the court pronounced sentence accordingly.

Webb has appealed her conviction. She contends that the evidence was insufficient to support her conviction, that § 195.015.4 is an unconstitutional delegation of legislative authority to the division of health, that phencyclidine had not been rescheduled from a Schedule I drug to a Schedule II drug, and that the State's closing argument was prejudicial. Affirmed.

Denise Webb was in the company of two other females at Jimmie's Steak House in Kansas City around 3:00 a.m. on February 14, 1981. While Webb and her friends were eating, a number of police officers arrived and began searching the premises pursuant to a valid search warrant. In the course of their search the officers learned of Webb's identity and shortly thereafter arrested her on an outstanding warrant. One of the police officers testified that Webb had been holding a purse, but that when she learned she was being placed under arrest she gave the purse to Diane Williams, one of her female companions.

1. All sectional references are to Missouri's Revised Statutes, 1978.

The officer searched the purse, and inside it he found a cylinder which had the appearance of a Tootsie Roll. Upon opening the cylinder, the officer discovered several foil packets, three sandwich type bags containing a white powder, and folded pieces of paper containing a white crystalline like substance. The items found in the cylinder were later tested and found to contain marijuana and phencyclidine.

The purse also contained a checkbook, a credit card, a Missouri ID card, and a hospital ID card, all bearing the name of Denise Webb. No other identification was found in the purse. The officer testified the identification and the cylinder were all found in the purse which Webb had been holding, but had later handed to Williams. He stated that Williams was already holding a purse when Webb handed this one to her. Webb testified that she had been carrying only a wallet that night, and that after she had used ID from her wallet to gain entrance to the steak house, she handed her billfold to Diane Williams, who placed it in her purse.

█ Webb first contends that the evidence was insufficient to sustain a finding of guilt. In testing the sufficiency of the evidence, this court must accept as true all evidence of Webb's guilt together with all reasonable inferences which support the guilty verdict, while disregarding all evidence which is contrary to the verdict. *State v. Brooks,* 618 S.W.2d 22, 23[1] (Mo. banc 1981).

█ Webb bases her argument regarding the insufficiency of the evidence solely on her testimony that she was not carrying a purse on the night in question, and that the purse found to contain the controlled substance actually belonged to Williams. However, both officers testified that Webb had originally been holding the purse in question and had later handed it to Williams. This constitutes sufficient evidence from which the jury could have reasonably believed that the purse in which the drug was found was owned by Webb, and that she had handed the purse to Williams after she realized she was being arrested.

█ Webb also contends that § 195.015.4 is an unconstitutional delegation of legislative authority in that it allows reclassification of a controlled substance from one schedule to another schedule. If Webb had raised this constitutional question at the earliest possible moment and if she had preserved it throughout, this case would have come under the Supreme Court's jurisdiction. *State v. Thompson,* 627 S.W.2d 298, 303[4] (Mo. banc 1982). However, Webb did not raise this constitutional question until she filed her motion for new trial, and thus has not preserved the question for review. *State v. Harris,* 564 S.W.2d 561, 570[9] (Mo.App.1978). Furthermore, in *State v. Thompson, supra,* the court examined the identical constitutional issue that Webb raises, and held that § 195.015.4 does not constitute an unconstitutional delegation of legislative authority.

█ Webb next contends that the State failed to submit evidence that the division of health had rescheduled phencyclidine from a Schedule I to a Schedule II drug. The State introduced 13 C.S.R. 50–130, effective on February 13, 1979, which contains the amended schedule of controlled substances and reclassifies phencyclidine from a Schedule III drug to a Schedule II drug. The question of whether or not a certain drug is classified as a Schedule II drug or Schedule III drug is a question of law, *State v. Harris, supra* at 568[5], and the court can take judicial notice of the Code of State Regulations. Section 536.-031.5. Thus, the trial court properly found that phencyclidine had been reclassified from Schedule III to Schedule II.

█ Webb finally contends that several aspects of the prosecutor's closing argument were prejudicial to her. Her first complaint along these lines relates to the fact that the prosecutor mentioned that two drugs, marijuana and phencyclidine, were found in the purse, in spite of the fact that there was no charge pending for possession of marijuana. Under Missouri law, possession of marijuana is logically relevant in establishing that another drug was pos-

**418**

sessed with full knowledge of its illegal character. In *State v. Williams*, 539 S.W.2d 530, 534–35[8] (Mo.App.1976) the court addressed this issue:

> Although proof of possession of marihuana [sic] is not ipso facto evidence of knowing possession of heroin, where the two controlled substances and paraphernalia for their use are found at the same time and in the same place in open view, it has a logical tendency to prove a material fact at issue, that is, the knowing possession (footnote omitted).

Thus, the prosecutor's argument was proper when he said the presence of marijuana in the purse tended to prove a knowing possession of phencyclidine.

■ The next aspect of the prosecutor's argument that Webb complains of relates to a statement made by the prosecutor concerning the harm flowing from the possession of drugs, followed by the statement "[g]ranted in our society today there is a use of drugs." Webb objected to this statement on the ground that there was no evidence as to Webb's use of the drugs found in the purse. A review of the argument on this point reveals that the prosecutor was referring to the need to enforce drug laws, and was not arguing that Webb had in fact been using the drugs found. The prosecutor is entitled to argue to the jury the necessity of law enforcement as a detriment to crime. *State v. Heinrich*, 492 S.W.2d 109, 114[9] (Mo.App.1973). Thus, Webb's complaint on this point is not valid.

Webb has also protested regarding comments made by the prosecutor in answer to Webb's attorney's suggestion that the jury take the phencyclidine to the jury room. The prosecutor warned the jury not to injest any of the substance, stating that "[f]or all we know this amount could be enough to get all of the people in this room messed up." The court sustained Webb's general objection to that statement, stated that there was no evidence to support it, and honored counsel's request that the jury be instructed to disregard the statement. Counsel's motion for a mistrial on this grounds was refused, and it is this refusal that Webb now takes objection to.

■ Ordinarily the court's admonition to the jury to disregard an improper argument is deemed to cure its prejudicial effect. *State v. Davison*, 601 S.W.2d 623, 627[2] (Mo.1980). This court's review of the refusal to grant a mistrial is limited to a determination of whether, as a matter of law, the court abused its discretion in refusing to grant a mistrial. *State v. Jones*, 578 S.W.2d 286, 288[1] (Mo.App.1979). *Jones* makes the point that the trial court is in a better position to observe and evaluate the incident giving rise to the request for a mistrial than is this court. In light of the fact that the court promptly sustained the objection and instructed the jury to disregard it, in combination with this court's recognition of the fact that the trial court is in a better position to rule on such a motion, the trial court cannot be held to have abused its discretion in refusing to grant a mistrial.

■ Finally, Webb complains regarding references made by the prosecutor to the fact that while other people had been with Webb at the time of her arrest, none of them had appeared to testify. In *State v. Moore*, 620 S.W.2d 370, 374[4] (Mo. banc 1981), the court stated:

> [I]f a witness can be expected to testify favorably to one party, he is 'peculiarly available' to that party, and the failure to call that witness gives rise to the inference that his testimony would actually have been unfavorable rather than favorable.

The situation here fits squarely within the rule adopted in Moore. The people in question were with Webb at the time of her arrest and under the circumstances of this case could be expected to have testified favorably to her. Thus, her failure to call them gives rise to the inference that their testimony would actually have been unfavorable rather than favorable, and the prosecutor acted within his rights in calling this to the jury's attention.

The judgment is affirmed.

All concur.