**STATE of Missouri, Respondent,**

v.

**Martin SAND, Appellant.**

No. 14835.

Missouri Court of Appeals,
Southern District,
Division One.

May 15, 1987.

Motion for Rehearing or Transfer
to Supreme Court Denied
June 5, 1987.

Application to Transfer Denied
July 14, 1987.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Martin Sand ("defendant"), tried as a prior offender, § 558.016.2,[1] and as a persistent offender, § 558.016.3, was found guilty by a jury of possession of methamphetamine, § 195.020.1, a Schedule II controlled substance, and sentenced by the trial court to eight years' imprisonment. Defendant appeals, maintaining that the evidence was insufficient to support the verdict, and that the prosecutor improperly questioned a defense witness about an arrest that "had not resulted in a conviction by time of trial."

---

1. References beginning "§" are to RSMo Cum.    Supp.1984.

On the sufficiency issue, we consider the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Guinan,* 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald,* 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that defendant was guilty. *State v. Bonuchi,* 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560, 576–77 (1979).

So viewed, the State's evidence showed that about 2:00 a.m., January 4, 1986, officer Bill Hawkins of the Carthage Police Department, while on patrol, observed a Ford automobile in the middle of Olive Street blocking both lanes. A "license check" revealed that the Ford was registered to defendant, and that there was an "active city warrant" for his arrest.

Hawkins saw two occupants in the Ford, a female sitting behind the steering wheel, and a male passenger. Hawkins parked his patrol car and walked toward the Ford, observing that defendant had gotten out on the passenger side. .

Recognizing defendant "from past experience," Hawkins approached defendant, informed him of the warrant, and placed him under arrest. Hawkins granted defendant's request to speak to the female in the Ford, and also granted defendant's request to speak to the occupant of a nearby house. Hawkins then escorted defendant to Hawkins' patrol car, directing defendant to place his hands on the trunk.

Defendant said, "What's going on," and Hawkins repeated the command, whereupon defendant began running.

Hawkins gave chase, and after a pursuit of approximately "one house length," managed to grasp a jacket defendant was wearing. At that point, testified Hawkins, "[Defendant] let the jacket fall free of his body and I dropped the jacket and continued to chase him."

After running "about another house length," Hawkins tackled defendant, and, with the assistance of other officers who had arrived at the scene, subdued defendant and handcuffed him.

Returning to his patrol car, Hawkins began looking for the jacket, and noticed it had been picked up by the female he had seen in the Ford. Hawkins asked her for the jacket, but she did not respond, so he asked again and simultaneously took the jacket from her. A search of the jacket pockets revealed a plastic bag containing a substance Hawkins suspected was marihuana, a plastic syringe, and a "cardboard band-aid box" containing two small packets of white powder.

The substance in the plastic bag was later identified by a chemist as marihuana; the chemist identified the substance in the two packets as methamphetamine.

Pamela Gail Fisher, called as a witness by defendant, testified that about 8:30 p.m., January 3, 1986, she went with defendant, in his Ford, to Mitchell's Garage in Sarcoxie, where defendant had some repair work done on the vehicle's radiator. When that was finished, defendant, according to Ms. Fisher, began helping a friend do some work on the latter's truck.

Ms. Fisher testified she decided to visit a girl friend in Sarcoxie, so she drove the Ford to the friend's residence. Upon arriving there, said Ms. Fisher, she got out of the Ford and "put on a jacket of Marty's [2] that was in the car."

Ms. Fisher explained that she was carrying the marihuana, the syringe, and the cardboard box containing the packets of methamphetamine in her purse. Upon entering her friend's residence, Ms. Fisher, so she testified, went in the bathroom and "shot up" some of the methamphetamine in

2. In her testimony, Ms. Fisher referred to de-    fendant as "Marty."

the back of her hand. Then, said Ms. Fisher, she placed the marihuana, the syringe, and the methamphetamine in one of the jacket pockets.

Ms. Fisher eventually left her friend's residence, returning to Mitchell's Garage to pick up defendant. Ms. Fisher testified that upon arriving there, she took off the jacket and threw it in the back seat.

Ms. Fisher recounted that she and defendant then drove to Carthage so defendant could inquire about borrowing a pickup the next day. According to Ms. Fisher, defendant put on the jacket as he exited his Ford to go to the pickup owner's house. Asked whether she told defendant that the substances were in the jacket pocket, Ms. Fisher answered, "No, I didn't."

Ms. Fisher admitted she picked up the jacket where it fell during the chase. Asked why, she replied, "Because I knew it had the drugs in it." She added that although she had had a "drug problem" in the past, she had, since defendant's arrest, enrolled in "Ozark Mental Health," where she was undergoing treatment.

The prosecutor's cross-examination of Ms. Fisher included this:

"Q Isn't it true that you were still in possession of crank when you were arrested on April 18, 1986? [3]

[Defendant's lawyer]: Your Honor, I'm going to object. If I may approach the bench.

(Out of the hearing of the jury)

[Defendant's lawyer]: I don't believe it is proper impeachment to attack a witness on the ground of an arrest......

[Prosecutor]: But she said she's cured herself, she's taken help, she's off of it and I'm bringing it out that she still had it with her on April the 18th. If she hadn't opened that up, I agree it's not, but the fact that she was in possession of it ... I'll strike the question about arresting, but the fact that she was in possession of it on April 18th is offered to show that she's still an addict.

[Defendant's lawyer]: I think she testified that she had a drug problem and she had enrolled herself in a course of treatment. I don't recall a response that is she had cured herself of that. I'd again submit that an admissible form of question for impeachment.

THE COURT: Well, I don't think it's been established when she claims to have cured herself or claims to have taken the treatment.

[Prosecutor]: She said, 'right after this I started taking treatment at Ozark,' and I think it's relevant to show she's still ... she opened up the question about being an addict.

THE COURT: Leave out anything about the arrest. You can ask her if she's still using it or possessing it.

(Proceedings return to open court)

Q [by Prosecutor] Isn't it true you were still using crank on April 18th?

A No, I wasn't still using it.

Q You were still possessing it on April 18th, weren't you?

A That was left in that case from the same time that I had this here. That had been in there for a long time.

Q So you just carried that crank around in your purse from January to April 18th, is that right, is that what you're telling the jury?

A It wasn't actually any crank in there, it was just a....

[Defendant's lawyer]: Your Honor, could we approach the bench again?

(Out of the hearing of the jury)

[Defendant's lawyer]: I think the questions are calling for an answer that relates to some arrest on April 18th and I object to those questions in that they are an improper form of impeachment.

[Prosecutor]: I'm just asking her if she still had crank in her purse on the 18th.

[Defendant's lawyer]: Well, I think that's been asked and answered.

[Prosecutor]: Well, she's trying to say that she didn't know that she had it

---

**3.** The chemist who identified the substance in the two packets in the cardboard box as meth-amphetamine testified that its "street name" was "crank."

there, she started to say there was no crank in those bags.

THE COURT: Avoid any reference to the arrest.

[Prosecutor]: Okay.

(Proceedings return to open court)

Q [by Prosecutor] You still had some bags in your purse that you believed to have contained crank on April the 18th, isn't that right?

A It was just a small wrapper like this right here.

Q I see. You'd already shot most of it up then, isn't that right?

[A] Yes, way back when....

Q I see. But you still had the package left in your purse on the 18th of April, isn't that right?

A Yes, it was stuck down in a compact mirror case."

Defendant's first point avers:

"The trial court erred in overruling [defendant's] motion for judgment of acquittal at the close of all the evidence ... because there was insufficient evidence to support [defendant's] conviction ... in that the evidence ... failed to establish beyond a reasonable doubt that [defendant] knowingly possessed the [methamphetamine] recovered from the pocket of his jacket, as the evidence also tended to establish that the jacket had also been in the custody of and control of Pamela Fisher on the evening in question, Fisher testified that the [methamphetamine] belonged to her rather than [defendant], and Fisher was in possession of the jacket immediately prior to discovery of the [methamphetamine]."

■ Defendant correctly cites *State v. Barber*, 635 S.W.2d 342 (Mo. 1982), and *State v. Reynolds*, 669 S.W.2d 582 (Mo. App. 1984), for the proposition that to sustain a conviction for possession of a controlled substance under § 195.020, the State must prove that the accused knowingly and intentionally possessed the proscribed substance, and that to meet its burden, the State must establish either actual or constructive possession, and must also establish that the accused was aware of the presence and nature of the substance in question. *Barber*, 635 S.W.2d at 343[2]; *Reynolds*, 669 S.W.2d at 584[1].

The crux of defendant's first point is that the evidence failed to establish that he knew the methamphetamine was in his jacket pocket at the time he was confronted by officer Hawkins. Defendant emphasizes that there was no direct evidence that he was aware of the presence of the methamphetamine; consequently, the State was constrained to rely on circumstantial evidence to establish that element. Defendant concedes that knowledge may be proved by circumstantial evidence, *Barber*, 635 S.W.2d at 343[3], but he reminds us that to support a conviction on circumstantial evidence, the facts and circumstances must be consistent with each other, must tend to prove guilt, and must not only be consistent with the hypothesis of guilt, but must also be inconsistent with any reasonable hypothesis of innocence. *State v. Brown*, 683 S.W.2d 301, 303[2] (Mo.App. 1984).

Defendant insists that the evidence supports two reasonable hypotheses of innocence.

First, so he says, the jury could have reasonably found that Ms. Fisher placed the methamphetamine in the jacket pocket while the officers were attempting to subdue defendant. Defendant alleges Ms. Fisher could have reasonably feared that she would be questioned and searched by the officers, so she used that method of jettisoning the methamphetamine.

Second, according to defendant, the jury could have reasonably found that Ms. Fisher placed the methamphetamine in the jacket pocket at her friend's residence, as she testified she did.

The answer to defendant's second hypothesis is that the jury was not obliged to believe Ms. Fisher's testimony. The credibility and weight of testimony are for the jury to determine, and a jury may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. *State v. Jackson*, 608 S.W.2d 420, 421[1] (Mo. 1980). Acceptance of the

State's evidence as true, and rejection of Ms. Fisher's testimony as false—as the jury was entitled to do—vitiates defendant's second hypothesis of innocence.

Defendant's first hypothesis of innocence is likewise untenable. The jury was not obliged to believe that Ms. Fisher had the methamphetamine in her possession anytime during the evening. Moreover, there is no testimony whatever to support the first hypothesis, as Ms. Fisher did not testify she put the methamphetamine in the jacket pocket after the jacket was abandoned during the chase.

■ Ironically, Ms. Fisher aided the State in one respect, as she testified that the jacket belonged to defendant. The State's evidence established that defendant had exclusive possession of the jacket—he was wearing it—at the time he was confronted by officer Hawkins. The State's evidence further showed that defendant fled when it became evident that Hawkins intended to search him. Such conduct was circumstantial evidence supporting a finding of knowing possession of contraband. *State v. Harrington*, 679 S.W.2d 906, 907[6] (Mo.App. 1984).

We hold that the evidence and all inferences reasonably to be drawn therefrom, considered in the light most favorable to the verdict, with all contrary evidence and inferences disregarded, is consistent with the theory of defendant's guilt, and inconsistent with any reasonable theory of his innocence. Defendant's first point is, accordingly, denied.

Defendant's second point maintains that the trial court erred in denying defendant's motion for a new trial, in that the prosecutor improperly attacked Ms. Fisher's credibility by questioning her "regarding her arrest and contemporaneous possession of drugs, as that arrest had not resulted in a conviction by time of trial."

■ Earlier in this opinion, the colloquy on which this assignment of error is predicated is set forth verbatim. An examination of that excerpt readily demonstrates that defendant's lawyer[4] objected

on the ground that a witness cannot be impeached by showing an arrest. The trial court instructed the prosecutor to make no further mention of the arrest, and the prosecutor obeyed. Defendant's lawyer requested no additional relief. Where an accused's objections to questions are sustained and there is no further objection or motion requesting additional relief, nothing is preserved for appellate review, as the accused has been granted all the relief requested. *State v. Montgomery*, 223 S.W.2d 463, 466–67[11] (Mo. 1949); *State v. Harris*, 622 S.W.2d 330, 336[13] (Mo.App. 1981). Defendant's second point is denied, and the judgment is affirmed.

GREENE, P.J., and HOLSTEIN, J., concur.

---

4. The lawyer representing defendant on this appeal is not the lawyer who represented defendant at trial.