STATE of Missouri, Respondent,

v.

James Jon VITALE, Appellant.

No. 57444.

Missouri Court of Appeals,
Eastern District,
Division One.

July 10, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 29, 1990.

Application to Transfer Denied
Oct. 16, 1990.

Robert D. Blitz, Nelson L. Mitten, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, James Jon Vitale, appeals from his January 9, 1987, bench tried conviction for possession of a schedule II controlled substance pursuant to RSMO section 195.020 (1986). On January 9, 1987,

the court suspended imposition of sentence and placed appellant on three years probation. Appellant violated his probation and, on September 27, 1989, the court sentenced him to a one year term of imprisonment. Appellant contends in this appeal that there was insufficient evidence to convict him and that the trial court erred in failing to suppress the controlled substance as evidence because it was the fruit of an unlawful search. We affirm.

■ We begin by noting that where a defendant waives his right to have his fate determined by a jury and selects, instead, to allow the court to decide, the court's findings shall have the force and effect of a jury trial. *State v. Robinson*, 664 S.W.2d 543, 545 (Mo.App., E.D.1983). We, therefore, accept as true the evidence propounded by the State, together with all reasonable inferences drawn from this evidence and disregard all contrary evidence and inferences. *Id.* With this in mind, the relevant facts of the case are as follows.

On the afternoon of June 6, 1985, the appellant went to Body Builders, Inc., a local gym, for his normal workout. Appellant placed his blue, Body Builders jacket on a coat rack inside the gym. When he left the gym at around 4:00 p.m., the appellant grabbed his jacket from the rack. Appellant then drove to his girlfriend's house and she drove him to work.

Appellant arrived at United Parcel Service, his place of employment, at approximately 5:00 p.m. He took the jacket, placed it on a coat rack, went and bought a soda and then put his jacket back on and walked to his work station. As he arrived, three Secret Service Agents appeared with a federal warrant for his arrest on counterfeiting charges. Appellant was advised by the agents to place his hands up in the air. He was also told that the agents would be searching him. Appellant then immediately began to try to take his jacket off and proclaimed that the jacket did not belong to him.[1]

Agent John Britt again told the appellant to put his hands up but the appellant continued to attempt to take off the jacket. Agent Britt then physically secured appellant's hands against a wall and Agent Britt removed appellant's jacket, concerned that it may contain weapons or contraband. Appellant continued to deny ownership.

Agent Britt felt the jacket and noticed that something was inside both pockets. Agent Britt removed appellant's wallet from one pocket and from the other pocket Agent Britt found a white paper packet which contained white powder (later determined to be cocaine), a drinking straw, and lip balm. Agent Britt testified that a straw was sometimes used to snort cocaine and that lip balm was sometimes placed around the nose to reduce irritation when snorting. Appellant challenges the sufficiency of this evidence.

■ In order to sustain a conviction for possession of a controlled substance under RSMo § 195.020, the State must prove the defendant knowingly and intentionally possessed the substance and was aware of its presence and nature. *State v. Webster*, 754 S.W.2d 12 (Mo.App., E.D.1988). Knowledge can be proven by circumstantial evidence. *State v. Sand*, 731 S.W.2d 488, 491 (Mo.App., S.D.1987).

Appellant claims that there was no evidence establishing his knowing possession of cocaine. Appellant's defense at trial was that he picked up someone else's jacket as he left Body Builders and did not realize his mistake until he saw Agent Britt remove the cocaine, straw and lip balm.

In *Sand*, police officers noticed the defendant's automobile in the middle of the road and discovered that there was an outstanding arrest warrant for the defendant. *Sand*, 731 S.W.2d at 489. The police had defendant and his female companion get out of the vehicle and when the police attempted to have the defendant place his hands on the trunk of his car, the defendant fled and discarded the jacket he was wearing. *Id.* Defendant's female compan-

---

**1.** Neither Secret Service Agent John Britt nor appellant could recall exactly what words appellant used to disclaim ownership of the jacket. Agent Britt testified that appellant stated, in effect, "this is not my jacket" while appellant testified that he said "this can't be my jacket."

ion retrieved the jacket which was later found to have contained marijuana and metamphetamine. *Id.* Defendant's companion testified that she had placed the drugs in defendant's jacket pocket and that the defendant did not know the drugs were there. *Id.* at 489–90.

Despite this testimony, the Southern District found sufficient evidence to support defendant's conviction for possession of a controlled substance. *Id.* at 492. Specifically, the court noted that defendant's exclusive possession of the jacket (his wearing it) and his fleeing when it was evident he would be searched constituted circumstantial evidence supporting a finding of knowing possession of the drugs. *Id.* The finder of fact, a jury in *Sand*, could simply have chosen not to believe the testimony of defendant's companion. *Id.* at 491–92.

■ In the case at bar, appellant had exclusive possession of the jacket upon the agent's arrival and appellant began denying ownership of the jacket as soon as it was apparent that he would be searched. We also note that he testified that he travelled to his girlfriend's house and was taken to work while wearing the jacket. Further, he stated that upon his arrival at work, he momentarily took off the jacket without recognizing that it was not his. His sudden realization that he had the wrong jacket upon being arrested is suspect given these facts. Moreover, the credibility of testimony is a matter for the trial court and not a proper subject for our review. *Webster*, 754 S.W.2d at 13. The trial court was entitled to not believe appellant's testimony.

■ Likewise, appellant claims that there was no evidence to support a finding that he knew the nature of what he possessed. However, we have held that evidence of a defendant's efforts to conceal, dispose of or discard controlled substances when confronted by police is sufficient to raise a jury question (question of fact) as to defendant's knowledge of the nature of the substance. *Webster*, 754 S.W.2d at 13. *State v. Jones*, 760 S.W.2d 536, 538 (Mo. App., E.D.1988).

In *State v. Webb*, 646 S.W.2d 415 (Mo. App., W.D.1983), the defendant was sitting with friends at a restaurant when police arrived with a search warrant for the premises. *Id.* at 416. During the course of the police search, they realized there was an arrest warrant for Ms. Webb. *Id.* When Ms. Webb realized that she was about to be arrested, she handed her purse to her friend. *Id.* The defendant claimed at trial that the purse, which contained P.C.P., belonged to her friend even though it contained defendant's identification cards. *Id.* at 417. The Western District found this evidence sufficient to convict Ms. Webb. *Id.*

In the case at bar, although appellant did not literally try to conceal or discard the controlled substance, his attempt to quickly rid himself of the jacket and disclaim ownership infers guilty knowledge of the character or nature of the substance. *Jones*, 760 S.W.2d at 538.

Appellant also challenges the admissibility of the cocaine based on his assertion that the agent's search was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution and Article One, §§ 10 and 15 of the Missouri Constitution. Appellant argues that, since he was already handcuffed by the time Agent Britt searched his jacket, there was no danger that appellant may have accessed a weapon or destroyed evidence which would justify a warrantless search. Appellant too narrowly construes the lawful arrest exception to the warrant requirement, however.

■ There is no disputing that the appellant was lawfully arrested; the agents were acting pursuant to a valid arrest warrant. Incident to a lawful arrest an officer may conduct a warrantless search of the person of the arrestee and of the area within his immediate control in order to prevent the arrestee from obtaining a weapon or destroying evidence. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *State v. McCabe*, 708 S.W.2d 288, 291 (Mo.App., E.D.1986). The justification for this authority rests as much on the need to disarm a suspect as it

does on the need to preserve evidence on his person for later use at trial. *U.S. v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973). In other words, the lawful arrest exception enforces society's interest in obtaining and preserving possible evidence of crime to the same extent as it serves to protect the safety of the arresting officer(s) from hidden weapons. Therefore, appellant's argument that his alleged inaccessibility to any weapon in his jacket rendered the lawful arrest exception inapplicable loses its appeal.

Any remaining doubt regarding the agent's authority to search appellant's jacket while appellant is handcuffed, is erased by the United States Supreme Court's decision in *U.S. v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). In *Edwards*, the defendant was lawfully arrested and charged with attempting to break into a post office. *Id.* at 801, 94 S.Ct. at 1236. He was taken to a local jail around 11:00 p.m. *Id.* The next morning, defendant's clothing was seized and paint chips found thereon which matched the paint found on the post office window were used against him at trial. *Id.* at 802, 94 S.Ct. at 1236–37. In upholding the validity of the search, the Supreme Court stated that "once the accused is lawfully arrested and in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between his arrest ... and the taking of the property for use as evidence." *Id.* at 807, 94 S.Ct. at 1239. See also *McCabe*, 708 S.W.2d at 291. It follows that the search of appellant's jacket following his arrest and handcuffing was permissible since the jacket could have been searched under *Edwards* even after his incarceration.

The fact that appellant was possibly without access to the jacket was not fatal to the search either. In *U.S. v. Palumbo*, 735 F.2d 1095 (8th Cir.1984), the defendant argued that the search of his dresser drawer was improper since his being handcuffed prevented him from reaching the dresser. *Id.* at 1097. While recognizing that it was not clear from the record whether defendant was, indeed, handcuffed, the 8th Circuit stated:

> Moreover, accessibility, as a practical matter, is not the benchmark. The question is whether the cocaine was in the area within the immediate control of the arrestee within the meaning of *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). This rule defines the area which may be searched, and is not constrained because the arrestee is unlikely at the time of the arrest to actually reach into that area.

The evidence in the present case clearly indicates that the appellant was standing directly in front of Agent Britt during the search. The jacket and cocaine were within appellant's immediate control.

Appellant also argues that the search was improper since the agents were arresting appellant on a counterfeiting charge and admitted that the purpose of their search was to ensure that he was not armed. In *Robinson*, the defendant was arrested for driving with a revoked driver's license. *Robinson*, 414 U.S. at 221, 94 S.Ct. at 470. The officer conducted a patdown search and felt an object in the left breast pocket of defendant's coat which turned out to be 14 heroin tablets. *Id.* at 223–24, 94 S.Ct. at 471–72. In affirming the defendant's conviction for possession and facilitation of concealment of heroin, the U.S. Supreme Court stated that:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Id.* at 235, 94 S.Ct. at 477.

█ Accordingly, it is no defense to the propriety of the present search that the

**488**

evidence discovered was unrelated to the counterfeiting charge for which appellant was being lawfully arrested. The lawful arrest provided the authority for the agent's search and, quite unwittingly, appellant's protestations regarding his jacket provided the agent with the motivation to search it.

The appellant's conviction and sentence are affirmed.

REINHARD and CRIST, JJ., concur.