

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100471 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Steven R. Ohmer |
| DERRICK L. CARRAWELL, | ) | |
| | ) | |
| Appellant. | ) | FILED:  February 10, 2015 |

### Introduction

Appellant Derrick Carrawell ("Carrawell") appeals the judgment of the trial court entered upon a jury verdict finding Carrawell guilty of one count of the class C felony of possession of a controlled substance.  The trial court sentenced Carrawell as a prior and persistent drug offender to 12 years' imprisonment.  On appeal, Carrawell argues that the trial court erred in denying his motion to suppress evidence of a shopping bag containing heroin seized from him by police.  Because the officers searched the shopping bag incident to Carrawell's lawful arrest, the trial court properly admitted the contents of the bag into evidence.  We affirm the judgment of the trial court.

## Factual and Procedural History

On April 9, 2012, police officer Curtis Burgdorf ("Officer Burgdorf") and three other officers were patrolling a neighborhood. As the officers were speaking to residents about increased gang and narcotic activity in the area, Officer Burgdorf observed a vehicle pull up nearby and park. The vehicle caught Officer Burgdorf's attention because the vehicle did not immediately park next to the curb, but instead, stayed in the traffic lane for about 30 seconds, with the driver staring in the officers' direction. The driver was later identified as Carrawell. Officer Burgdorf observed Carrawell exit the vehicle, at which point he stared at Officer Burgdorf, grabbed his crotch, spit in the officers' direction, and said "what the f--k are you looking at, bitch?"

At this time, there were several other people in the officers' vicinity, including three individuals the officers had been speaking to, one of whom had his seven-year-old daughter with him, and two or three other female individuals. Each of these individuals were on the same side of the street as Officer Burgdorf. Four or five other individuals were standing on the side of the street where Carrawell had parked his vehicle.

Carrawell walked to the passenger side of his vehicle and retrieved a white plastic bag. Carrawell continued to use profanities toward the officers, staring at Officer Burgdorf and saying things such as, "motherf--cking police." Officer Burgdorf testified that everyone in the vicinity was taken aback by the way in which Carrawell was speaking to the officers. The father of the seven-year-old girl covered his daughter's ears as Carrawell continued to shout profanities toward the officers.

As Officer Burgdorf crossed the street toward Carrawell, Carrawell began walking away toward an apartment complex while saying "what the f--k are you going to do?" At that point,

2

Officer Burgdorf advised Carrawell that he was under arrest for peace disturbance and ordered him to stop. Carrawell continued walking, passing through a gate that surrounded the apartment complex. Carrawell asked his daughter to close the gate behind him, which she did not do. Officer Burgdorf followed Carrawell through the open gate and again advised him to stop and that he was under arrest. Carrawell again refused to cooperate and continued to walk toward the apartment entrance. As Carrawell opened the door to the apartment building, Officer Burgdorf grabbed him by the arm and pulled him away from the door. Carrawell pulled away from Officer Burgdorf, attempting to break his grasp, but Officer Burgdorf was able to push Carrawell up against a wall.

The other officers were able to reach through the gate and assist Officer Burgdorf in securing Carrawell and handcuffing him. During this time, Officer Burgdorf advised Carrawell several times to drop the bag, and Carrawell refused. Carrawell continued to hold onto the bag with his right hand even after his left arm had been placed in handcuffs. Officer Burgdorf's intention was to place both of Carrawell's hands in handcuffs, but he was unable to do so because Carrawell continued to hold onto the bag, ignoring Officer's Burgdorf's requests to drop it. Officer Burgdorf was ultimately able to place Carrawell's right arm in handcuffs and complete the handcuffing process after he had "forcefully removed" the bag from Carrawell's hand. The bag fell to the ground and made a breaking sound. Officer Burgdorf retrieved the bag and the officers escorted Carrawell to the police car. Carrawell continued to scream profanities throughout the arrest, and, after being informed of his Miranda rights, told Officer Burgdorf "Good job. You got yourself a big-time heroin dealer." Once Carrawell was secured in the police car, Officer Burgdorf opened the bag. Officer Burgdorf testified that he did not know what was in the bag prior to opening it, and that he opened the bag because it may have

3

contained a weapon. He testified that it was also department policy to inventory an arrested person's property. Officer Burgdorf discovered a broken ceramic plate and a tan powdered substance inside the bag. Subsequent crime lab testing confirmed the tan powder to be heroin.

Carrawell was charged in the Circuit Court of the City of St. Louis with felony drug possession. Prior to trial, Carrawell filed a motion to suppress the physical evidence seized from him during his arrest, as well as any testimony concerning that evidence. In support of the motion, Carrawell alleged that "[t]he search was unlawful in that it was conducted without a warrant, without probable cause and was not within the scope of any exception to the warrant requirement." Carrawell further alleged that no consent was given to the search conducted by the officers, and that the search and seizure were not incident to a lawful arrest. The trial court considered Carrawell's motion to suppress on July 1, 2013. After hearing testimony from Officer Burgdorf and arguments from each party, the trial court denied the motion. The trial court reasoned that Carrawell had abandoned the bag, and that even if he did not intend to do so, the bag would have nevertheless been searched during the inventory process. At that time, counsel for Carrawell offered a continuing objection with respect to the motion to suppress. The trial court stated that "[t]he motion to suppress objection will be continuing and for the record it's preserved for any appeal."

The trial court commenced a jury trial on July 1, 2013, during which the State presented the testimony of Officer Burgdorf and the other two officers who arrested Carrawell. The State also introduced the physical evidence seized from Carrawell in connection with his arrest. During the trial, the trial court took it upon itself to note, and overrule, Carrawell's continuing objection each time the State offered exhibits constituting the seized evidence into evidence. At the close of the evidence, the parties stipulated that Carrawell was a prior and persistent drug

4

offender. On July 2, 2013, the jury entered a verdict finding Carrawell guilty of felony drug possession.

After trial, Carrawell filed a motion for new trial in which he claimed, *inter alia*, that the trial court erred in denying his motion to suppress and in overruling his objections to the related exhibits introduced at trial. In support of his motion, Carrawell alleged that the officers lacked probable cause for the warrantless search of the bag because the bag was not within Carrawell's wingspan and thus was not subject to a search incident to arrest. Carrawell also alleged that the trial court's failure to sustain his motion to suppress violated his 4th Amendment right to be free from unreasonable searches and seizures.

Carrawell was sentenced to 12 years' imprisonment by the trial court at a sentencing hearing on August 23, 2013. The trial court also denied Carrawell's motion for new trial at that time. This appeal follows.

## Point on Appeal

In his sole point on appeal, Carrawell contends that the trial court erred and abused its discretion in denying his motion to suppress because the police officers' actions in seizing the bag Carrawell was carrying at the time of his arrest violated his constitutionally protected right to be free of unreasonable searches and seizures, in that 1) Carrawell did not voluntarily abandon the bag; instead, the police officers physically ripped it from his possession, 2) the State failed to show that the police officers had probable cause to arrest Carrawell for violating the City of St. Louis ordinance relating to "peace disturbance" such that their subsequent seizure and search of the bag was justified, and 3) even if the police officers lawfully arrested Carrawell, the State failed to show that they searched the bag pursuant to lawful authority.

5

On appeal, a trial court's ruling on a motion to suppress will be reversed only if it is "clearly erroneous." State v. Cook, 273 S.W.3d 562, 567 (Mo. App. E.D. 2008). A trial court's ruling is deemed clearly erroneous if the appellate court is left with a definite and firm belief a mistake has been made. Id. The evidence is viewed in the light most favorable to the trial court's ruling and deference is given to the trial court's determinations of credibility. State v. Johnson, 207 S.W.3d 24, 44 (Mo. banc 2006). The evidence presented at both the suppression hearing and at trial is considered in evaluating the denial of a motion to suppress. State v. Lovelady, 432 S.W.3d 187, 190 (Mo. banc 2014). The determination as to whether conduct violates the Fourth Amendment, however, is an issue of law that is reviewed *de novo*. State v. Waldrup, 331 S.W.3d 668, 672 (Mo. banc 2011).

Our concern on appeal is with the correctness of the result reached by the trial court, not the route taken to reach that result. Vilsick v. Standard Insulations, Inc., 926 S.W.2d 499, 501 (Mo. App. E.D. 1996). We will therefore affirm the judgment if any other proper grounds exist based on the whole record. Holdener v. Fieser, 971 S.W.2d 946, 950 (Mo. App. E.D. 1998).

## Discussion

As a threshold matter, the State posits that Carrawell did not properly preserve his claim for appellate review because he failed to lodge a specific objection to the admission of the seized evidence or the related testimony at trial. We disagree. At the suppression hearing, after the trial court denied the motion to suppress, Carrawell requested and the trial court agreed to a continuing objection pursuant to the motion to suppress. While counsel for Carrawell did not actually object at trial, the trial court noted and overruled the continuing objection upon introduction of each relevant piece of evidence and testimony. Thus, Carrawell's claim is

properly preserved for appellate review.  See State v. Baker, 103 S.W.3d 711, 716 (Mo. banc 2003).

**I.      The officers had probable cause to arrest Carrawell for peace disturbance.**

Carrawell argues that Officer Burgdorf and the other arresting officers did not have probable cause to arrest Carrawell for a violation of the City of St. Louis peace disturbance ordinance, such that any subsequent search and seizure incident to that arrest was unlawful.[1]  We disagree.

Probable cause exists when circumstances and facts would warrant a person of reasonable caution to believe an offense has been committed.  State v. Kampschroeder, 985 S.W.2d 396, 398 (Mo. App. E.D. 1999).  The determination of whether a police officer has probable cause to make an arrest must be made in relation to the circumstances as they appeared to a prudent, cautious and trained officer.  Id.  The level of proof required to show probable cause is much less than that required to establish guilt beyond a reasonable doubt.  Lord v. Dir. of Revenue, 427 S.W.3d 253, 257 (Mo. App. E.D. 2014).

Carrawell correctly states that a violation of the peace disturbance ordinance at issue requires conduct calculated to provoke a "breach of the peace," which Missouri courts have interpreted as "acts or conduct inciting violence or intended to provoke others to violence." City of St. Louis v. Tinker, 542 S.W.2d 512, 516 (Mo. banc 1976).  The ordinance has long been construed, "insofar as verbal conduct is concerned, to only proscribe[] verbal conduct which tends to excite immediate violence." Id. at 519.  Carrawell's arrest was therefore only lawful if

---

[1] Carrawell also argues that because the peace disturbance ordinance itself was not offered or admitted into evidence at trial, there was no evidence before the trial court upon which it could have decided that Officer Burgdorf had probable cause to arrest Carrawell.  Given the trial court's knowledge and experience, as well as the existence of substantial case law construing the ordinance in question, the trial court was readily capable of determining that Officer Burgdorf had probable cause to arrest Carrawell without a copy of the ordinance being admitted into evidence.

7

the facts and circumstances at the time of arrest were sufficient to cause a prudent, cautious, and trained police officer to believe that Carrawell's conduct or language was intended to provoke others to violence or was reasonably probable to incite violence. In making this determination, the "conduct or language used by the speaker and its probable effect with respect to immediate violence must be viewed in the setting in which it occurs." Id.

The record before us supports our conclusion that the officers had probable cause to arrest Carrawell for violating the peace disturbance ordinance, and therefore, that his arrest was lawful. The officers were patrolling a neighborhood experiencing an increase in violent, gang-related, narcotic criminal activity when they encountered Carrawell. Several individuals were gathered on the street. Carrawell was shouting loudly, and was vulgar and persistent in his verbal conduct, which was directed toward the officers in a threatening manner. Officer Burgdorf testified that he observed other people in the area showing concern "with what [Carrawell] was saying as well." Given the number of people in the vicinity, as well as the dangerous nature of the neighborhood, a prudent, cautious, and trained police officer in Officer Burgdorf's position reasonably could conclude that Carrawell's conduct was intended to provoke others to violence or was reasonably probable to incite violence. These facts amply support Officer Burgdorf's decision to arrest Carrawell for peace disturbance.

## II. The officers lawfully searched Carrawell's bag as part of a search incident to arrest.

Carrawell alternatively argues that even if the officers lawfully arrested him, they did not search the bag pursuant to lawful authority. In support of this claim, Carrawell advances several arguments. First, Carrawell maintains that the search cannot be upheld as a lawful search pursuant to abandonment because Carrawell did not voluntarily abandon the bag. Rather, the bag was forcefully removed from his hand by Officer Burgdorf. Second, Carrawell argues that

8

the search cannot be upheld as a lawful inventory search because the State failed to show that the officers' department has standardized criteria for opening closed containers. Third, Carrawell argues that the search cannot be upheld as a search incident to arrest because at the time of the search, the officers had taken sole possession of the bag, Carrawell was already handcuffed and secured, and the bag was not immediately associated with Carrawell's person.

The first two arguments are raised by Carrawell in response to the trial court's stated reasons for denying Carrawell's motion to suppress. In denying the motion to suppress, the trial court concluded that Carrawell had abandoned the bag, and that even if he did not intend to do so, the bag would have nevertheless been searched during the inventory process. Because we find that the officers' search of Carrawell's bag was a search incident to a lawful arrest, we do not address Carrawell's arguments relating to abandonment or inventory.

The Fourth Amendment to the United States Constitution guarantees the right of all citizens to be free from unreasonable searches and seizures. Article I, section 15 of the Missouri Constitution guarantees that same right. "As a general rule, warrantless searches and seizures are presumptively unreasonable and therefore unconstitutional unless the search and seizure falls within certain well-established, narrowly delineated exceptions." State v. Ellis, 355 S.W.3d 522, 523-24 (Mo. App. E.D. 2011). One such exception is for searches incident to lawful arrests, which permit police officers to search and seize arrested suspects' effects without a warrant. This exception provides that "[p]ursuant to a lawful arrest, a search may be performed of the arrestee's person and the area 'within his immediate control." State v. Waldrup, 331 S.W.3d 668, 676 (Mo. banc 2011).

Within this exception, police officers are permitted to search, "as part of the search of a person incident to a lawful custodial arrest, the personal effects on the person of an arrestee at the

9

time of the arrest." Ellis, 355 S.W.3d at 524. Missouri courts have consistently held that personal effects closely associated with a person and within their control at the time of arrest such as purses, jackets, and backpacks may be searched as part of the search of a person incident to a lawful arrest. See, e.g., id. (backpack); State v. Vitale, 795 S.W.2d 484 (Mo. App. E.D. 1990) (jacket); State v. Greene, 785 S.W.2d 574 (Mo. App. W.D. 1990) (purse); State v. Rattler, 639 S.W.2d 277 (Mo. App. E.D. 1982) (purse); State v. Woods, 637 S.W.2d 113 (Mo. App. E.D. 1982) (purse); United States v. Oakley, 153 F.3d 696 (8th Cir.1998) (backpack). The reason that property on a person may be searched as part of the search of a person is that "such property is more 'immediately associated' with the 'person' of the arrestee than other personal property." Ellis, 355 S.W.3d at 525. Further, such searches need not be executed contemporaneously with the seizure. It does not matter that the property seized is no longer within the immediate control or reach of the suspect – a lawful search of the property may still occur at that time. See, e.g., Ellis, 355 S.W.3d at 523-25 (stating that "[t]he accessibility of the property to an arrestee while the property is being searched has not been the benchmark" and holding that a backpack searched *after* the suspect was secured in the police car was a valid search of the suspect's person incident to a lawful arrest).

We find the facts presented here to be similar to those facts cited above. The bag seized from Carrawell was firmly within his possession and control at the time of arrest. In fact, Carrawell maintained possession of the bag even after being placed under arrest. The bag, just like a purse or backpack, was a personal effect immediately associated with Carrawell's person. As a result, the officers were entitled to search the bag as part of their search of Carrawell's person incident to his lawful arrest. The fact that the officers took the bag from Carrawell and

Carrawell was subsequently secured in the police car does not detract from the lawfulness of the search incident to arrest.

## Conclusion

Although we reach the same result as the motion court, we do so for a different reason. The record shows that Officer Burgdorf had probable cause to arrest Carrawell for peace disturbance and the officers' subsequent search of the bag – a personal effect immediately associated with Carrawell's person – was incident to that lawful arrest. Accordingly, the trial court's denial of Carrawell's motion to suppress is not clearly erroneous. The judgment of the trial court is affirmed.

Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs