STATE of Missouri, Respondent,

v.

Marvin LOCKETT, Appellant.

No. WD 32933.

Missouri Court of Appeals,
Western District.

July 20, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 31, 1982.

Application to Transfer Denied Oct. 18, 1982.

James W. Fletcher, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Phillip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SOMERVILLE, C. J., and WASSERSTROM and MANFORD, JJ.

SOMERVILLE, Chief Judge.

A jury found defendant guilty of robbery in the first degree, a class A felony, Section 569.020, RSMo 1978, and fixed his punishment at fifteen years imprisonment. Judgment was rendered and sentence pronounced accordingly.

Defendant exhorts this court to set aside the conviction and order his acquittal because of the insufficiency of the evidence to support the guilty verdict returned by the jury. Placed in proper perspective, this single point does not question the sufficiency of the evidence with respect to proof of the statutory elements of the crime, but, instead, questions the sufficiency of the evidence with respect to proof of defendant's participation therein.

No evidence was presented by or on behalf of defendant. Perforce, defendant's right to appellate relief rises or falls on the evidence presented by the state which lends itself to the following summarization. At approximately 3:30 P.M. on the afternoon of June 9, 1980, the manager of a hardware store located in a shopping center on Blue Ridge Boulevard, Jackson County, Missouri, observed a light green Buick automobile with a black or dark green vinyl top pull up to the rear of a drugstore located next door. The manager of the hardware store became suspicious because the Buick automobile

was in an area generally restricted to delivery and service vehicles. He observed two black males in the Buick, and noted the vehicle's license number, to wit, PLJ–926.

The manager of the hardware store observed the black male on the passenger's side of the Buick get out and walk towards the rear of the drugstore, and then return to the Buick and engage in conversation with the black male on the driver's side. The hardware store manager subsequently identified the black male he saw on the driver's side of the Buick (a person other than defendant) at a police line up, but was unable to identify the black male he saw on the passenger's side of the Buick. The only description he could give as to the latter being that he was black, of medium build, and was wearing sunglasses. He indicated that because of the sunglasses he "could not see a good facial description."

Responding to his suspicions, the manager of the hardware store entered the adjoining drugstore by way of the front entrance and alerted the owner. Thereupon, the owner of the drugstore went to the rear of his store where he encountered a black male brandishing a "silver plated" handgun. The black male demanded narcotics and accompanied the owner of the drugstore to the prescription room. There, the culprit, while pointing the handgun at the owner, demanded certain narcotics by name and threw the owner a pillowcase to put them in. The owner complied by giving him two bottles of "Empirin Compound # 2", whereupon the culprit departed the store. The owner of the drugstore was unable to provide much of a description of the black male who robbed him. Due to the nerve-wracking experience he had been put through, he could only say that the offender was a black male, a "little taller" and "stouter" than he, had "facial hair", and was wearing "glasses or sunglasses".

After alerting the owner of the drugstore, the manager of the hardware store returned to the rear of his establishment in time to observe the Buick automobile leave the rear of the drugstore premises at a high rate of speed.

The robbery was immediately reported to the police and a description of the Buick automobile, along with its license number, was broadcast on the police radio band at approximately 3:43 P.M. Some fifteen minutes later two police officers cruising in a patrol car in the vicinity of Sixty-third and Indiana Streets spotted the Buick automobile occupied by the two black males travelling north on Indiana. Upon seeing the patrol car, the driver of the Buick turned east onto Sixty-third Street at a high rate of speed. The patrol car gave chase with its siren and red lights activated. The Buick proceeded east on Sixty-third Street to Swope Parkway with the patrol car in pursuit. At Swope Parkway the Buick ran a red light and then turned north on Swope Parkway. As the Buick turned north on Swope Parkway, the pursuing police officers observed the black male on the passenger's side of the Buick throw two objects out of the window which landed on the parkway on the east side of Swope Parkway. The chase continued a short distance farther on Swope Parkway; then the Buick pulled over to the side of the street and stopped. After the two black male occupants were placed under arrest, one of the police officers returned to the intersection of Sixty-third Street and Swope Parkway where the two objects had been observed being thrown from the window on the passenger's side of the Buick. The officer recovered two bottles of "Empirin Compound # 2" at the location which were later identified as the two bottles of "Empirin Compound # 2" taken during the drugstore robbery.

When the two black males were placed under arrest, defendant was identified as the driver of the Buick and his companion was identified as the occupant on the passenger's side. At the time of his arrest, defendant was "wearing a goatee". He was taken to police headquarters at approximately 5:00 P.M. and, while being processed, was told that later that evening he would be placed in a line up. When defendant was brought down from the Detention Unit at approximately 9:40 P.M. to appear

in the line up, he had shaved off his goatee and altered or changed the part in his hair. Defendant and the other occupant of the Buick at the time of the arrest were placed in a three-man line up which was viewed by the owner of the drugstore and the manager of the hardware store. Neither the owner of the drugstore nor the manager of the hardware store could identify the defendant. The manager of the hardware store did, however, identify the person on the passenger's side of the Buick at the time of the arrest as the driver of the Buick when it left the rear of the drugstore.

■ Submissibility of the state's case in the narrow context of defendant's culpability rests entirely upon circumstantial evidence. The accepted standard for reviewing the sufficiency of the evidence in a case resting entirely upon circumstantial evidence is laid down in State v. Franco, 544 S.W.2d 533, 534 (Mo. banc 1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977): " 'the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.' [citations omitted] ... '[but] the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence ... [and] the mere existence of other possible hypothesis is not enough to remove the case from the jury.' " Cited and approved in State v. Biddle, 599 S.W.2d 182, 192 (Mo. banc 1980).

Three particular segments of evidence prominently emerge when applying the above standard of review. One, defendant's attempt to flee when the patrol car was encountered; two, joint possession of property taken during the robbery; and three, defendant's alteration of his physical appearance after his arrest and before appearing in the police line up. Similar evidentiary segments have been the subject of considerable litigation culminating in some well entrenched principles which afford guidance in the instant case. A seriatim discussion follows.

■ Flight need not be traced from the exact scene of an offense. State v. Coleman, 441 S.W.2d 46, 53 (Mo.1969). It may "be either from the scene of the crime or elsewhere if it is in order to avoid arrest or prosecution." State v. Rutledge, 524 S.W.2d 449, 458 (Mo.App.1975). Although flight to avoid arrest or prosecution, standing alone, will not sustain a conviction, it is a circumstance indicating guilt. State v. Castaldi, 386 S.W.2d 392, 395 (Mo.1965); State v. Clark, 445 S.W.2d 294, 295 (Mo. 1969); State v. Simmons, 494 S.W.2d 302, 305 (Mo.1973); State v. Harris, 602 S.W.2d 840, 845 (Mo.App.1980); and State v. May, 587 S.W.2d 331, 334 (Mo.App.1979).

■ Joint possession of recently stolen property will support an inference of guilt. State v. Webb, 432 S.W.2d 218, 222 (Mo. 1968); State v. Barker, 572 S.W.2d 185, 187 (Mo.App.1978); and State v. Powell, 542 S.W.2d 588, 590 (Mo.App.1976). When coupled with other evidence connecting an accused with an offense, joint possession of recently stolen property will support a conviction. State v. Schleicher, 458 S.W.2d 351, 353 (Mo. banc 1970); and State v. Gonzales, 533 S.W.2d 268, 272 (Mo.App. 1976). Admittedly, the fact that defendant was occupying the driver's seat of the Buick at the time of his arrest makes it highly improbable that he threw the bottles of "Empirin Compound # 2" out of the window on the passenger's side. Such pragmatic recognition, however, would not preclude a finding by the jury that defendant and his companion at the time were in joint possession of property stolen during the robbery of the drugstore. Under virtually an identical factual situation, it was held that the driver of a vehicle, who aided in the attempted disposal of stolen property by accelerating the vehicle he was driving to elude pursuing police, "was, under the law here applicable, a party to its possession." State v. Schleicher, supra, 458 S.W.2d 353. See also ANNOT. 51 A.L.R.2d 727, at 797–98. A corollary principle exists which is also worthy of mention—an attempt to destroy evidence shows a consciousness of guilt. State v. Dennis, 622

S.W.2d 404, 405 (Mo.App.1981); and *State v. Quigley,* 591 S.W.2d 740, 743 (Mo.App. 1979).

 A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or accused's role therein. *State v. Williams,* 600 S.W.2d 120, 122 (Mo.App.1980); and *State v. Brooks,* 551 S.W.2d 634, 647 (Mo. App.1977), *cert. denied* 434 U.S. 1017, 98 S.Ct. 736, 54 L.Ed.2d 763 (1978). For example, submission of a false name after arrest, *State v. Russ,* 599 S.W.2d 103, 104 (Mo.App. 1980), and the spoliation of evidence, *State v. Turner,* 633 S.W.2d 421, 1982, bespeak of a consciousness of guilt from which a permissible inference of guilt may be drawn. Although no Missouri cases have been found directly in point, alterations or changes made by an accused to his physical appearance subsequent to commission of an offense as indicative of a consciousness of guilt and affording a basis from which an inference of guilt may be drawn has the imprimatur of at least two other courts. *United States v. McKinley,* 485 F.2d 1059, 1061 (D.C.Cir.1973); and *People v. Slutts,* 259 Cal.App.2d 886, 66 Cal.Rptr. 862, 866 (1968).

 This is not a case where only a single, isolated bit of circumstantial evidence was presented from which an inference of guilt could be drawn. To the contrary, the state presented a combination of circumstances, all forming one continuous chain of events with a perceptible nexus— flight, joint possession of stolen goods, and alteration or change in physical appearance—which were singularly indicative of guilt and collectively afforded a basis for drawing an inference of guilt. Flight, joint possession of stolen property, and alteration of physical appearance were singularly and collectively consistent with each other and the hypothesis of defendant's guilt. Conversely, they were inconsistent with defendant's innocence and excluded any reasonable hypothesis of his innocence. *State v. Franco, supra.* The legal momentum of the circumstantial evidence presented by the state foreordains the conclusion reached on appeal—substantial evidence existed to support proof of defendant's guilt beyond a reasonable doubt and to overcome the presumption of innocence with which he was clothed.

Judgment affirmed.

All concur.