**STATE of Missouri, Respondent,**

**v.**

**William K. ROWE, Appellant.**

**William K. ROWE, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**Nos. 55952, 59860.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 18, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 16, 1992.

Application to Transfer Denied
Oct. 27, 1992.

Dave Hemingway, St. Louis, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

William Rowe, appellant, appeals his jury trial conviction of one count of involuntary manslaughter, § 565.024 RSMo 1986, and one count of armed criminal action, § 571.-015 RSMo 1986. (All further references shall be to RSMo 1986 unless otherwise noted). Appellant was sentenced to seven years imprisonment for involuntary manslaughter, and a consecutive term of twenty years imprisonment for armed criminal action.

On appeal, appellant raises five points claiming that the trial court erred in: (1) denying his motion for judgment of acquittal on the armed criminal action count because the legislature did not intend the statute to increase punishment for reckless behavior, thereby violating his fourteenth amendment due process guarantee of conviction only upon proof of the crime charged; (2) permitting the state to present the opinions of Dr. Parwatikar, the psychiatrist who examined appellant shortly after his arrest, by asking the defense psychologist if he was aware of Dr. Parwatikar's findings, thereby allowing prejudicial hearsay; (3) permitting evidence of uncharged crimes, in violation of his sixth amendment right to a fair trial and fourteenth amendment due process right to be tried only for the offense charged: (a) the arresting officer, Officer McDermott, testified that appellant threatened to shoot the President, and (b) the state psychologist, Dr. Carafoil, testified that appellant said he was chased by people seeking retribution for a shooting incident weeks before. Further, the motion court erred in: (1) denying appellant's claim that the trial court and defense counsel denied him his sixth amendment right to testify and have effective counsel; and (2) failing to render any Findings of Fact or Conclusions of Law on any of the claims in appellant's *pro se* motion. We affirm the judgments of the trial court and motion court.

Appellant does not contest the sufficiency of the evidence so a brief review of the evidence adduced at trial in the light most favorable to the verdicts will be sufficient. Appellant resided in St. Louis county with his uncle, Willie B. Hanes, who lived next door to Dr. Fred Goerss. We note that the record on appeal reflects varying spellings of "Goerss". For purposes of this opinion, we shall use the spelling in the indictment. Etoy Gilyard, Hanes' girlfriend, also lived with Hanes. On the evening of August 11, 1987, appellant smoked marijuana with some of his friends. Appellant and one of his friends, Adrian Buggs, went to his uncle's home where they continued to smoke marijuana. Appellant also drank beer, and may have ingested cocaine. When appellant's friend left for her home at approximately 1:30 a.m., appellant was talking strangely and had brought out a gun.

At approximately 4:00 a.m. that same morning, appellant entered his uncle's bed-

room with a gun. Appellant awakened his uncle and his uncle's girlfriend by talking strangely and telling them that he wanted to use the telephone. Hanes became alarmed because of appellant's strange behavior and the way appellant was handling the gun. Hanes attempted to get appellant to leave the bedroom. A scuffle ensued and appellant hit his uncle with the telephone. Eventually, Hanes got appellant out of the bedroom. Hanes and Gilyard immediately blocked the door, jumped out of the bedroom window, and went up the street to a gas station from where they contacted the police. Gilyard testified that as she and Hanes were en route to the gas station, she heard gun shots from the direction of the house.

When the police arrived, they immediately went to Hanes' home. Outside the house the police found six empty shell casings and appellant's clothing, including his shirt, his pants, and his underwear. The police heard one shot while they canvassed the area in an unsuccessful search for appellant, and shortly thereafter received a call about a naked man who appeared at a residence.

While Hanes and Gilyard were running to the gas station for help, one of the neighbors, James Thomas, heard his dog barking. He then heard someone tapping at his back door, and a voice said "[o]pen your door, I'm your brother." Thomas switched on the spotlights in the backyard, and when he looked out of the window to see what was exciting his dog, he saw appellant running naked through his backyard. Upon going outside to investigate, he found that appellant had shot and killed his dog. Thomas later identified appellant in a lineup.

Later that same morning, the police apprehended appellant who was found in another neighbor's basement. Appellant's gun was not recovered. Officer Peter McDermott took appellant to St. Louis Regional Hospital for a psychological examination to determine if he was fit for confinement, since the officer believed that appellant had suffered a "whack attack", a drug episode experienced by those who ingest PCP. Appellant was deemed fit for confinement.

Appellant was then taken to the police station. Officer McDermott told appellant that he was under arrest for discharging a weapon, animal cruelty and unlawful use of a weapon while intoxicated. Appellant stated that he got high, got into a tussle with his uncle, got a gun, fired several shots from it, shot a dog because it was there, and then hid out from the police. Appellant also told the police that he was going to stop shooting four legged m— f—ers and move on to two legged m— f—ers and specifically that he was going to start with "the man", whom he later identified as the President.

Officer McDermott took appellant to the State Hospital on Arsenal Street for ninety-six hours of observation because he perceived that appellant was still under the influence of drugs and believed him to be a threat to the community due to his mental condition.

During the evening of August 12, 1987, the police received a call to check on Dr. Goerss after neighbors noticed his absence from his yard. The police found Dr. Goerss laying on his bed, his face in the window. Dr. Goerss died of a gunshot wound to the neck, by a bullet fired from the same weapon that fired a bullet the police recovered from a tree outside Dr. Goerss's house.

Appellant relied on the defense of mental disease or defect at trial. Dr. Givon, the forensic psychologist who performed the court ordered evaluation of appellant, testified that appellant was having a cocaine delusional disorder at the time of the offense which manifested itself in a psychosis that prevented appellant from appreciating the wrongfulness of his conduct and rendered him incapable of conforming his conduct to the law. On cross-examination, Dr. Givon testified that appellant told him that he was in his car parked outside of his uncle's house engaged in sex with another man named Jayton Johnson when some persons approached with weapons drawn. Appellant said that he then took off run-

ning wearing only his socks in order to avoid being shot.

Dr. Carafoil, the state's psychologist who examined appellant, testified that appellant was mentally competent at the time of the offense.

The jury found appellant guilty as charged. On October 17, 1990, appellant filed a *pro se* Rule 29.15 motion, alleging that his attorneys were ineffective in: 1.) failing to pursue Jayton Johnson, who could have testified that appellant was being pursued by gunmen when the offense occurred; and 2.) failing to object to an erroneous limiting instruction given before Dr. Givon testified.

Appointed counsel filed an amended 29.15 motion incorporating appellant's *pro se* claims and alleging that appellant's defense counsel and the trial court wrongfully deprived him of his sixth amendment right to testify. An evidentiary hearing was held and the motion court entered its Findings of Fact and Conclusions of Law denying appellant's motion, and concluding that appellant was not denied his sixth amendment right to testify but rather was unable to make up his mind regarding his decision to testify.

In his first point, appellant claims that the trial court erred in denying his motion for judgment of acquittal at the close of all evidence on the armed criminal action count because the legislature did not intend to increase punishment for merely reckless behavior thereby violating his fourteenth amendment due process guarantee of conviction only upon proof of the crime charged. In support of his claim, appellant relies on *State v. Hernandez,* 815 S.W.2d 67 (Mo.App.1991), where our colleagues of the Southern District ruled that the commission of a felony requiring a mental state of criminal negligence did not provide a basis for conviction of armed criminal action. *Hernandez,* 815 S.W.2d at 72. In *Hernandez,* the underlying criminal offense was involuntary manslaughter based on criminally negligent driving while intoxicated under § 565.024.1(2). *Id.* at 67. Noting that the armed criminal action statute does not specifically set forth a culpable mental state as an element of the offense, the court, relying on § 562.021.2, inferred that armed criminal action requires a culpable mental state of acting purposely, knowingly, or recklessly. *Id.* at 71–72. The court concluded that the armed criminal action charge could not stand because the culpable mental state of criminal negligence was "the least culpable of the mental states and lacks the moral implication of intent, knowledge and recklessness." *Id.* at 72.

■ The *Hernandez* court, in its discussion of the culpable mental state required for armed criminal action, mentioned in a footnote the concurring opinion of Judge Blackmar in *State ex rel. Bulloch v. Seier,* 771 S.W.2d 71, 76 (Mo. banc 1989) (Blackmar, J., concurring). *Hernandez,* 815 S.W.2d at 72 n. 3. In *Bulloch,* Judge Blackmar reasoned that an armed criminal action charge required a showing that the accused had the purpose of using the deadly instrument to cause death or serious injury. *Bulloch,* 771 S.W.2d at 76. Judge Blackmar stated that "[b]y the verdict of guilty of involuntary manslaughter it [the jury] found only that he [the defendant] had acted "recklessly" in using the tape and the gag. I do not believe that the armed criminal action statute was intended to cover a situation of the kind shown by this record." *Id.* at 76. Judge Blackmar's concurring opinion and the *Hernandez* footnote further suggest that the legislature did not intend the armed criminal action statute to apply to an involuntary manslaughter charge based on the criminally negligent operation of a motor vehicle. *Bulloch,* 771 S.W.2d at 76 (Blackmar, J., concurring); *Hernandez,* 815 S.W.2d at 72 n. 3.

Here, appellant was charged with involuntary manslaughter for recklessly causing the death of Dr. Goerss. Missouri's involuntary manslaughter statute, § 565.024, provides in pertinent part:

> 1. A person commits the crime of involuntary manslaughter if he:
>
> (1) Recklessly causes the death of another person; or

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person.

....

Section 562.016.4 defines the mental state "recklessly":

....

4. A person **"acts recklessly"** or is reckless when he consciously disregards a substantial and justifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

It is clear that § 565.024.1(1) under which appellant was charged requires a culpable mental state of recklessly.

In contrast, the armed criminal action statute, § 571.015, defining armed criminal action as the commission of any felony under the laws of this state "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon", does not expressly set forth a culpable mental state as an element of the offense. Further, the statute does not clearly indicate a purpose to dispense with the requirement of a culpable mental state as to a specific element of the offense. *See* § 562.026(2); *State v. Miller,* 657 S.W.2d 259, 261 (Mo.App.1983).

Since the armed criminal action statute does not expressly set forth a culpable mental state or clearly indicate a purpose to dispense with a culpable mental state, we must refer to § 562.021.2 which provides in pertinent part:

562.021 Culpable mental state, application.

....

2. Except as provided in section 562.-026 if the definition of an offense does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly, but criminal negligence is not sufficient.

....

Therefore, we must conclude that a culpable mental state is an element of the armed criminal action charge, and, pursuant to § 562.021.2, armed criminal action requires a culpable mental state of acting purposely, knowingly, or recklessly. *State v. Elam,* 779 S.W.2d 716, 718 (Mo.App.1989).

Here, appellant was convicted of involuntary manslaughter under the submitted verdict directing instruction, modeled after MAI–CR3d 313.10, which required a finding that appellant caused the death of Dr. Goerss by shooting him and secondly that he did so recklessly. This case is distinguishable from both the *Hernandez* and *Bulloch* cases. In *Hernandez,* the charge was vehicular manslaughter requiring a culpable mental state of criminal negligence, whereas here, the charge is involuntary manslaughter requiring a culpable mental state of recklessly. In *Bulloch,* the instrument used was tape and cloth which would be considered dangerous instruments only when used for the purpose of causing death or serious physical injury. *See* § 556.061(9) RSMo Supp.1991. Here, appellant used a gun which is clearly a dangerous instrument, a deadly weapon. *See* § 556.061(10) RSMo Supp.1991.

In his second point, appellant claims that the trial court erred in permitting the state to present the opinions of Dr. Parwatikar, the psychiatrist from State Hospital who examined him approximately thirteen hours after his arrest, by asking Dr. Givon, the defense psychologist if he was aware of Dr. Parwatikar's findings, thereby allowing prejudicial hearsay violating appellant's sixth amendment rights to confrontation, cross-examination and a fair trial. Appellant argues that the out-of-court statements were textbook examples of hearsay and were used to challenge the opinions of a live witness thus depriving appellant of the chance to cross-examine the opinions expressed by the out-of-court declarant, Dr. Parwatikar, who did not testify.

The problem arose during the testimony of Dr. Givon wherein he stated a number of times that he had reviewed and relied on the police reports and the records of the

State Hospital along with other information leading him to the conclusion that appellant suffered a cocaine delusional disorder which precluded appellant from appreciating the wrongfulness of his conduct. On cross-examination, Dr. Givon acknowledged that it would have been easier to assess appellant's mental state had he been able to observe him at the time of the offense. The state then questioned Dr. Givon as to Dr. Parwatikar's report from State Hospital indicating that appellant did not suffer from a mental disease or defect.

The trial court is vested with broad discretion in determining the extent of cross-examination. *State v. Cutts,* 600 S.W.2d 75, 76[1, 2] (Mo.App.1980). Cross-examination may extend to all matters within the "fair purview" of direct examination, and may include collateral matters. *Id.* An expert witness may be cross-examined regarding facts not in evidence to test his qualifications, credibility, and skills or to test the validity and weight of his opinion. *State v. Goree,* 762 S.W.2d 20, 23[3] (Mo. banc 1988). Additionally, an expert witness is entitled to rely on hearsay evidence to support his opinion so long as that evidence is of a type reasonably relied upon by other experts in that field. *State v. McFall,* 737 S.W.2d 748, 755[4, 5] (Mo.App. 1987). Such evidence need not be independently admissible. *Id.*

Here, Dr. Givon stated a number of times on direct examination that he relied on the police reports and the State Hospital reports, along with his own observations and reports in forming his conclusion as to appellant's state of mind at the time of the offense. This opened the door for the state to cross-examine Dr. Givon as to how the information in the State Hospital reports affected his conclusion. Dr. Givon testified on cross-examination that he had Dr. Parwatikar's report and had read it. It is not uncommon for a doctor to refer to another doctor's report when making a diagnosis. Here, the state was challenging the validity of Dr. Givon's opinion by asking how Dr. Parwatikar's conclusions, contained in a report relied on by Dr. Givon, played a part in reaching the diagnosis. The trial court did not err in allowing this line of questioning.

Appellant's third point is that the trial court erred in permitting the state to use evidence of uncharged crimes in violation of appellant's fourteenth amendment due process right to be tried only for the offense charged. The evidence in question consisted of a) Officer McDermott's testimony that appellant threatened to shoot the President and b) Dr. Carafoil's testimony that appellant said he was being chased by people seeking retribution for a shooting incident weeks before. Appellant argues that this evidence was highly prejudicial and did not bear any legitimate value to prove whether appellant recklessly fired a fatal shot on the night in question.

A fundamental precept is that proof of the commission of separate, distinct and unrelated crimes is not admissible. *State v. Hutton,* 825 S.W.2d 883, 887[11–12] (Mo.App.1992). However, there are many exceptions to this general principle. Evidence of an uncharged crime which has independent, logical relevance to a fact in issue may be admissible if its prejudicial effect does not outweigh its probative value, *Id.* at 887–88, and it is the trial court that is in the best position to evaluate whether the potential prejudice outweighs the relevance. *State v. Shaw,* 636 S.W.2d 667, 672[6] (Mo. banc 1982), *cert. denied,* 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982).

The first statement at issue was made to Officer McDermott during his first interview after arresting appellant. We note that during this interview, the police were not yet aware that Dr. Goerss had been fatally shot. In response to the prosecutor's questioning, Office McDermott testified that appellant stated, "I'm going to stop shooting four legged m____ f__ers and start shooting some two legged m____ f__ers." The prosecutor, by reading from the police report, elicited appellant's subsequent statement "and I'm going to start with a—the man himself." Officer McDermott testified that upon inquiry as to whom "the man" referred to, appellant answered, "I'm talking about the f__ing president,

what's his name. You better keep me away from that m____ f__er." Appellant claims this statement was inadmissible evidence of uncharged crimes. The trial court ultimately permitted the testimony to be considered in assessing appellant's mental state and "allow[ed] it to be used strictly for that purpose."

It has been held that evidence of separate offenses are admissible if relevant to prove the accused's guilt of the particular crime of which he is being tried, as long as the evidence is not used merely to show the accused's bad character or his disposition to commit the crime. *State v. Rose,* 727 S.W.2d 919, 921[2–4] (Mo.App. 1987). "The general rule is that ... declarations of the accused occurring after the commission of an alleged offense which are relevant and tend to show a consciousness of guilt ... are admissible in evidence." *State v. Walker,* 357 Mo. 394, 208 S.W.2d 233, 236[1] (1948). Evidence is relevant if it tends to prove or disprove a fact in issue or if it corroborates evidence that is relevant and bears on a principal issue. *State v. Jackson,* 738 S.W.2d 510, 512[1] (Mo. App.1987). Before evidence can be excluded on the ground that it is irrelevant, it is essential that it appear so beyond a doubt. *State v. O'Neal,* 718 S.W.2d 498, 503[12] (Mo. banc 1986) *cert. denied,* 480 U.S. 926, 107 S.Ct. 1388, 94 L.Ed.2d 702 (1987) quoting *State v. Sanderson,* 528 S.W.2d 527, 531 (Mo.App.1975). If there is any doubt as to relevancy, the settled rule is that the evidence should go to the jury to enable them to draw their own inferences from it. *State v. Bates,* 540 S.W.2d 161, 166[5] (Mo. App.1976) quoting *State v. Tevis,* 340 S.W.2d 415, 420[12] (Mo.App.1960).

The issue in this case is whether or not appellant recklessly caused Dr. Goerss' death. A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. The prosecution has the burden of proving every element of the crime beyond a reasonable doubt and the state "should not be unduly limited as to the manner of satisfying this quantum of proof." *State v. Clemons,* 643 S.W.2d 803, 805[1–3] (Mo. banc 1983). Here, it is the state's burden to prove that appellant recklessly caused the death of Dr. Goerss. Mental state is rarely capable of direct proof. *See State v. Hemphill,* 699 S.W.2d 83, 85[4, 5] (Mo.App.1985). A finding of the requisite mental state is often inferred from the circumstances and the jury must make its determination by both the act and by the surrounding circumstances. *Id.* Here, the evidence that appellant stated he was going to stop shooting four legged m____ f__ers and move on to two legged m____ f__ers and specifically that he was going to start with "the man", whom he later identified as the President bears on appellant's disregard for life. The evidence indicates that appellant shot a dog, a four legged animal, and that he had intentions of shooting a two legged animal, by natural implication, a person. Here, the statement offers insight as to the appellant's mental state at the time of the charged offense. Appellant's statement was clearly indicative of a conscious disregard of a substantial and unjustifiable risk that a result would follow, i.e., that someone would be shot, and connected him to the shooting of the dog and Dr. Goerss. *See State v. Large,* 716 S.W.2d 431, 432–33[1] (Mo.App.1986). We find no abuse of discretion.

The second statement at issue involved appellant's remarks to the state's private psychologist, Dr. Carafoil, who examined appellant after the state objected to the results of the previous court ordered examination. Dr. Carafoil read a narrative of what the appellant told him regarding the night in question. Specifically, the testimony at issue consisted of the following:

> He [appellant] said at least two people (sic) approaching the vehicle and at the same time he thought it might be people seeking retribution for a shooting incident several weeks earlier.

Appellant argues that the reference to "a shooting incident several weeks earlier"

constitutes evidence of other crimes and its admission unduly influenced the jury.

Section 552.030 relates to psychiatric examinations made for the purpose of determining competency to stand trial and to enter a plea of not guilty by reason of mental disease or defect. Section 552.030.5 bans the use of statements made by the accused during the doctor's examination on the issue of whether the accused committed the act charged against him. However, the section does provide for the admission of such statements on the issue of appellant's mental state, if certain instructions are given. The transcript indicates that appellant's statement to Dr. Carafoil was admitted for the purpose of showing the foundation for the doctor's conclusion that the appellant suffered from no mental disease or defect.

Appellant correctly points out that the statute does not eliminate the judge's duty to balance the probative value of the proffered evidence against its prejudicial impact but further argues that the judge erred in his application of this balancing test. The process of balancing need against prejudice is not an easy one and this court must give the trial judge broad discretion and overturn the judge's ruling only in cases of substantial abuse. *State v. Hooks,* 785 S.W.2d 328, 329[2] (Mo.App. 1990).

Dr. Carafoil was asked about the statement as a preface to an inquiry as to his opinion concerning appellant's mental capacity. Dr. Carafoil based his conclusion that the appellant possessed an antisocial personality disorder but was otherwise coherent and mentally competent, in part, upon appellant's narration of the events on the night in question. Thus, the statement at issue was admissible as a basis for Dr. Carafoil's opinion as to appellant's mental state.

In addition, any prejudicial impact was alleviated by several factors. First, the record establishes that the oral instruction given when Dr. Carafoil took the stand and the formal instruction at submission of the case complies with the requirements of § 552.030.5 thereby insuring that the jury confined its consideration of the evidence to the issue of the mental state of the appellant and not to his guilt. Moreover, a review of the trial transcript reveals that the reference to the appellant's possible involvement in a shooting incident was an isolated incident and was mentioned only once by Dr. Carafoil. *See State v. Sloan,* 786 S.W.2d 919, 922[5] (Mo.App.1990). In order to invoke the rule that evidence which tends to prove other crimes is inadmissable, there must be evidence that the defendant has committed, or has been accused of, charged with, convicted of, or been definitely associated with, another crime or crimes. *State v. Garcia,* 682 S.W.2d 12, 13[1] (Mo.App.1984). Here, the statement does not clearly indicate that appellant was responsible for the shooting incident for which retribution was being sought. We find no error.

Appellant asserts two points of error by the motion court in denying his Rule 29.15 motion. Appellant claims that he alleged facts which show various incidents of ineffective assistance of counsel and a denial of appellant's constitutional rights. Appellate review of a Rule 29.15 proceeding is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Taylor v. State,* 782 S.W.2d 741, 743 (Mo.App. 1989); Rule 29.15(j). The court's findings and conclusions will be deemed clearly erroneous only if, after a review of the entire record, this court is left with a definite and firm impression that a mistake has been made. *Id.*

In his first point, appellant claims that he alleged facts which show that defense counsel and the trial court judge denied movant his sixth amendment right to testify. Initially, we note that an accused's right to testify in his own behalf is a statutory right and not a constitutional right. *State v. Irvin,* 628 S.W.2d 957, 959[6] (Mo.App.1982). In Missouri, an accused was first given the right to testify by statute in 1877. *Id.*

The motion court made the following finding of fact:

> Movant's ... claim is that the court took the decision as to whether Movant should

testify from Movant and left the decision to his counsel. The Court finds ..., that this is not a matter cognizable under Supreme Court Rule 29.15, it is, rather, a matter for appeal.

We agree with the motion court's finding. Alleged error in the judge's handling of appellant's decision to testify is not a matter for a 29.15 proceeding. *See Jordan v. State,* 792 S.W.2d 698, 699[1, 2] (Mo.App. 1990). In any event, we find appellant's contention concerning the judge's action to be without merit. *See State v. Worley,* 383 S.W.2d 529, 532[4] (Mo.App.1964).

To prevail on an ineffective assistance of counsel claim, appellant must show that his counsel's representation fell below an objective standard of reasonableness and that he was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

At the time of the trial, appellant's trial counsel was the First Assistant in the Public Defender's Office and had been practicing law for approximately fifteen years. He had tried somewhere between fifty and sixty criminal cases and had analyzed several hundred such cases. Appellant's trial counsel testified at the motion hearing that the court deferred to his decision when it became apparent that appellant could not make up his mind concerning his decision to testify. Appellant admits that he was aware of his right to testify and claims only that his counsel told him he "preferred" him not to testify. In addition, the record is replete with instances where the trial court made an effort to encourage appellant to decide whether or not to testify. On the second day of the trial, the trial court conducted a hearing to determine whether or not appellant understood he had the right to testify. It is apparent that appellant understood his right to testify and simply refused to make up his mind. Finding no evidence indicating that appellant was in any way denied his right to testify or prevented from exercising this right, appellant's point is denied.

Appellant's second and final point claims a procedural failure to render any Findings of Fact or Conclusions of Law on the claims raised in appellant's *pro se* motion which were incorporated by reference into the amended motion.

Missouri law does not require that the motion court enter itemized findings of fact and conclusions of law. *State v. Turner-Bey,* 812 S.W.2d 799, 809[19, 20] (Mo. App.1991). The only requirement is that the motion court's findings and conclusions be sufficient for an appellate court to adequately review the matters raised and determine whether the findings and conclusions were clearly erroneous. *Id.* Generalized findings may be enough for meaningful review. *State v. Taylor,* 779 S.W.2d 636, 646[17] (Mo.App.1989).

The motion court made thirty-eight Findings of Fact and five Conclusions of Law. While they may not have specifically addressed every contention raised by appellant, these findings were sufficient to allow this court to review appellant's contentions and conclude that the trial court's actions were not clearly erroneous.

All points having been denied, appellant's convictions for involuntary manslaughter and armed criminal action are affirmed.

JUDGMENT AFFIRMED.

Crandall, P.J., and Ahrens, J., concur.