**STATE of Missouri, Respondent,**

v.

**Ernest Wayne JENNINGS, Appellant.**

**No. WD 48965.**

Missouri Court of Appeals,
Western District.

Nov. 15, 1994.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

PER CURIAM:

Ernest Wayne Jennings appeals his conviction, following a jury trial, of involuntary manslaughter, § 565.024, RSMo 1986[1], and

---

1. All statutory citations are to Revised Missouri Statutes 1986, unless otherwise indicated.

armed criminal action, § 571.015. Mr. Jennings was sentenced to seven years imprisonment on the involuntary manslaughter charge and four years imprisonment on the armed criminal action charge, with the sentences to run concurrently.

The judgment of conviction is affirmed.

On the evening of September 4, 1993, Ernest Wayne Jennings was awakened by the sound of cars drag racing down Main Street in Gillman City. Mr. Jennings went outside and saw that his son, Randy Jennings, was driving one of the cars. Mr. Jennings got into his truck and drove to the intersection of Highway K and Main Street. When he reached Main Street, he went over to his son and told him to go home. Mr. Jennings then drove down the street and pulled up alongside a blue Mustang which was one of the other cars that had been drag racing. Mr. Jennings stepped out of his truck with a loaded .44 Magnum revolver in his hand and approached the driver's side of the Mustang. Jimmie Allen was sitting in the driver's seat of the Mustang. As Mr. Jennings approached the car, he pulled the hammer back on the gun, raised it at Allen, and told Allen to get out of there. At that point, the gun discharged, firing a single shot which hit Jimmie Allen in the forehead, fatally wounding him.

After the shooting, Mr. Jennings fled from the scene and returned home. Mr. Jennings was arrested and charged by amended information with second degree murder and armed criminal action. A jury trial was held in November 1993. The jury found Mr. Jennings guilty of involuntary manslaughter and armed criminal action. He was sentenced to seven years imprisonment for involuntary manslaughter and four years imprisonment for armed criminal action, with the sentences to run concurrently. Mr. Jennings now appeals.

■ Mr. Jennings contends the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence from which the jury could find beyond a reasonable doubt that he was guilty of involuntary manslaughter and armed criminal action. He claims the facts do not support a finding that he acted "recklessly" in causing the death of Jimmie Allen.

■ In reviewing the sufficiency of the evidence, this court accepts as true all evidence and inferences favorable to the state and disregards all contrary evidence and inferences. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). This court does not weigh the evidence or determine the reliability or credibility of witnesses. *State v. Middleton*, 854 S.W.2d 504, 506 (Mo.App.1993). Our review is limited to a determination of "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992).

Section 565.024.1 provides, in pertinent part, that:

1. A person commits the crime of involuntary manslaughter if he:

(1) Recklessly causes the death of another person; ...

Pursuant to § 562.016.4, a person "acts recklessly" or is "reckless" when the person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

At trial, Mr. Jennings testified that he had been awakened by cars drag racing down Main Street and that he was angry at the time. He also testified that, after being awakened, he got into his truck and drove down to Main Street in order to stop the drag racing. Mr. Jennings admitted that he took a gun with him when he stepped out of his truck and approached the vehicle in which Jimmie Allen was sitting. He further testified that he raised the gun at Jimmie Allen and pulled back on the gun's hammer. At that point, the gun discharged and a bullet struck Jimmie Allen in the forehead, causing his death.

Mr. Jennings maintains that his convictions cannot be upheld because he did not intend to harm Jimmie Allen, claiming that the gun discharged because of a mechanical defect. At trial, August Nilges, Jr., a foren-

sic examiner, testified that the hammer notch area of the gun was slightly beveled causing the double action mode of firing to be smoother than normal for this particular weapon. However, Nilges also testified that the revolver would not fire while the hammer was pulled back unless pressure was exerted on the trigger of the gun.

Viewed in a light most favorable to the verdict, the evidence in this case indicates, at the very least, that some degree of pressure must have been exerted on the trigger of the gun in order for it to discharge. Even if Mr. Jennings did not intentionally fire the gun at Jimmie Allen, the jury could have reasonably determined that Mr. Jennings' actions of raising a loaded gun at Jimmie Allen was a gross deviation from the standard of care that a reasonable person would have used in such a situation. *See, e.g., State v. Miller,* 772 S.W.2d 782, 783–84 (Mo.App.1989). The jury could also have determined that Mr. Jennings took a substantial risk that the gun might discharge when he pulled back the hammer into the firing position. Accordingly, the jury could reasonably have found that Mr. Jennings acted recklessly. The evidence was therefore sufficient to establish that Mr. Jennings committed the crime of involuntary manslaughter by recklessly causing the death of Jimmie Allen.

■ Mr. Jennings further contends that his conviction for involuntary manslaughter cannot support a conviction for armed criminal action. He argues that the legislature did not intend for the armed criminal action statute to apply to situations where a defendant "acts recklessly" and does not intend to harm or cause bodily injury to another person. Identical arguments have been expressly rejected by the courts of this state. *See, e.g., State v. Schmidt,* 865 S.W.2d 761, 764 (Mo.App.1993); *State v. Rowe,* 838 S.W.2d 103, 108–09 (Mo.App.1992).

Section 571.015.1 states, in pertinent part, that:

> [A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a

dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action....[2]

Although the armed criminal action statute does not specifically set forth a culpable mental state, it has been previously construed as requiring that the defendant acted "purposely, knowingly, or recklessly." *See Rowe,* 838 S.W.2d at 109. Similarly, the court of appeals in *Schmidt,* 865 S.W.2d at 764, held that a defendant may be convicted of involuntary manslaughter and armed criminal action if he recklessly causes the death of another person by the use of a gun.

It should be noted, however, that both *Rowe* and *Schmidt* relied on language in § 562.021.2 which was deleted when the statute was amended on August 28, 1993. This amendment occurred before Mr. Jennings committed his crime. Subsection 562.021.2 formerly read:

> [I]f the definition of an offense does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly, but criminal negligence is not sufficient.

Because this subsection has not been replaced by any comparable legislation, it is the task of the court to determine whether armed criminal action still requires a culpable mental state.

■ Legislative silence on the element of intent in a criminal statute should not necessarily be construed as an indication that a culpable mental state is immaterial. 22 C.J.S. *Criminal Law* § 31(b) (1989). *See also State v. Hefflin,* 338 Mo. 236, 249, 89 S.W.2d 938, 946 (1935). "Whether or not criminal intent or knowledge is an element of a statutory crime depends on the intent of the legislature, and is a matter of statutory construction...." *State v. McLarty,* 414 S.W.2d 315, 318 (Mo.1967) (quoting 22 C.J.S. *Criminal Law* § 30 (renumbered § 31(b))). Therefore, we interpret the current armed criminal action statute in light of the rules of statutory construction and previous case law.

---

**2.** Section 571.015.4 specifies that the armed criminal action statute shall not apply to certain felonies, however, involuntary manslaughter is not among them.

"[T]he primary rule of statutory construction is to ascertain the legislative intent from the statute's language, to give effect to that intent if possible, [and to] consider the words in their plain and ordinary meaning...." *Brownstein v. Rhomberg–Haglin & Assoc.*, 824 S.W.2d 13, 15 (Mo. banc 1992). Courts are to presume a logical result, as opposed to an absurd or unreasonable one. *David Ranken, Jr. Tech. Inst. v. Boykins*, 816 S.W.2d 189, 192 (Mo. banc 1991).

■ Considering the plain and ordinary meaning of the language of § 571.015, a person is guilty of armed criminal action if one commits a felony "by, with, or through the use, assistance or aid of a dangerous instrument or deadly weapon." Section 571.015.1. "By definition, armed criminal action incorporates all the elements of the underlying felony." *State v. Hernandez*, 815 S.W.2d 67, 72 (Mo.App.1991). By such incorporation, armed criminal action adopts the level of mental culpability required of the underlying offense.

In the instant case, Mr. Jennings committed the underlying crime of involuntary manslaughter by *recklessly* causing the death of Jimmie Allen. *See* § 565.024.1. The element of recklessness is incorporated into the armed criminal action offense, therefore, reckless behavior also becomes the required culpable mental state to maintain Mr. Jennings' conviction of armed criminal action.

Finally, to find Mr. Jennings guilty of armed criminal action, it is necessary to determine whether Mr. Jennings committed the offense of involuntary manslaughter "by, with, or through the use, assistance, or aid" of a deadly weapon. *See* § 571.015.1. Although it is undisputed that Mr. Jennings was holding the gun that discharged and killed Jimmie Allen, he argues that he cannot be convicted of armed criminal action because he did not intend to use the gun as a "deadly weapon" for the purpose of harming the deceased.

In support of his argument, Mr. Jennings cites *State ex rel. Bulloch v. Seier*, 771 S.W.2d 71 (Mo. banc 1989) *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), *Hernandez*, 815 S.W.2d 67, and *State v. Pogue*, 851 S.W.2d 702 (Mo.App.1993). These cases address whether certain objects, i.e., automobiles, may be classified as "dangerous instruments" when used with the intent or purpose of injuring another person.[3] Because Mr. Jennings fatally wounded Jimmie Allen with a gun, as opposed to an automobile, however, the cases are clearly distinguishable and do not apply to this issue.

Section 556.061(10), RSMo Cum.Supp.1993, defines "deadly weapon" as "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged...." The evidence in this case established that Mr. Jennings recklessly caused the death of Jimmie Allen by shooting him with a .44 Magnum revolver. The gun used by Mr. Jennings was clearly a "deadly weapon" for purposes of the armed criminal action statute. Accordingly, there was sufficient evidence to support a conviction for both involuntary manslaughter and armed criminal action.

The judgment of conviction is affirmed.

---

3. Section 556.061(9), RSMo Cum.Supp.1993, defines a "dangerous instrument" as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]"