

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,       )
                         )
    Plaintiff-Respondent,       )
                         )
vs.                      )       No. SD33973
                         )
MICHELE LYNN MONTIEL,    )       **Filed:  October 25, 2016**
                         )
    Defendant-Appellant.       )

APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Laura J. Johnson

**<u>AFFIRMED</u>**

Michele Lynn Montiel ("Defendant") appeals from her convictions for one count of second-degree assault and one count of leaving the scene of a motor vehicle accident.  Defendant claims (1) the evidence was insufficient to support her conviction for second-degree assault because there was no evidence her actions were reckless; (2) the trial court erred in failing to *sua sponte* instruct the jury to disregard the prosecutor's comment that Defendant's attorney committed an ethical violation; and (3) the evidence was insufficient to support her conviction for leaving the scene of a motor vehicle accident because there was no

evidence she knew injury or property damage had occurred. Defendant's arguments are without merit, and the trial court's judgment is affirmed.

## Factual and Procedural Background

This Court views the evidence in the light most favorable to the trial court's judgment. **State v. Wilson**, 333 S.W.3d 526, 527 (Mo. App. S.D. 2011). So viewed, the following facts were proven at trial.

Charles Rickard ("Victim") was horseback riding along Blue Springs Road with his friend Brad Rozell ("Mr. Rozell") around sunset on October 21, 2011. Victim and his horse, Poco, were about 4 feet off the roadway when they were hit from behind by a minivan. Mr. Rozell, who was riding another horse ahead of Victim, heard an explosive sound. He saw the minivan and established eye contact with the female driver who slowed initially before speeding away. Mr. Rozell then found Victim injured and unconscious lying half on and half off the road. Poco was also unconscious and clearly injured.

Dustin Lawson arrived on the scene and parked his car to provide protection for Victim from oncoming cars. Mark Moore arrived next on the scene, finding there was enough light that he could see the entire road, the surrounding area, and observe the injured man and horse.

Emergency personnel then arrived. Victim had a crushed skull, shattered wrist, and five or six broken ribs. Poco's numerous injuries included a broken leg, and he had to be euthanized. Mr. Rozell gave law enforcement officers a description of the minivan and the female driver.

The 911 call was received at 7:07 p.m. Highway Patrol Trooper Amanda Kahler ("Trooper Kahler") arrived, just after sunset, at 7:23 p.m. Headlights were

2

still not necessary to see.  She found a 21-foot skid mark, streaks of horse manure where it appeared the horse had been dragged by the vehicle, some scraps of silver or gray paint, and the passenger-side rearview mirror from a vehicle.  The debris trail was approximately 104 feet long.

Shortly after ten that evening, Defendant contacted the police.  Trooper Kahler was dispatched to Defendant's home.  Defendant told Trooper Kahler she had hit an animal in the area but until she saw a story on the ten o'clock news about a horse and rider being hit, she did not realize she might have been the driver in that accident.  There was a silver Dodge Caravan parked in the driveway.  The minivan had suffered extensive damage.  The passenger-side rear view mirror was missing.  The passenger side of the front windshield was shattered and protruded into the vehicle.  There was horse hair, blood, flesh, and manure all over the minivan, including a chunk of flesh stuck in the luggage rack on the top of the vehicle.  The headlight assembly was broken, and the fender had been torn away.  A portion of the horse's tail was stuck in the headlight assembly.  There was broken glass and manure inside the passenger compartment of the vehicle as well.

Trooper Kahler found a dish cloth in the headlight assembly.  When she inquired of Defendant, Defendant said she had tried to wipe off the vehicle when she got home.  Defendant said there was "horse hair and tissue and blood all over" and that "it was disgusting."  At that point, Trooper Kahler asked Defendant if she had been drinking, and Defendant stated she had two beers at around 2:30 in the afternoon.  Defendant showed one indicator of intoxication on the horizontal gaze nystagmus test and smelled faintly of alcohol.  Defendant began

3

to cry and said she had hit a horse. Defendant said "she never did see a rider" and gave no explanation for why she did not stop.

Defendant was charged with second-degree assault and leaving the scene of a motor vehicle accident. Defendant had a jury trial on April 13 through 15, 2015. The State adduced the evidence summarized above.

Defendant adduced evidence that deer-vehicle collisions were common and that "colliding with a deer can cause serious property damage to a vehicle." Then Defendant testified that at the time of the collision it was dark and she had her headlights on. She heard a "loud thump" and looked back to see what she had hit, but did not see anything. She assumed she had hit a deer and continued driving. She testified she did not realize she had hit a horse and rider until she saw the story on the ten o'clock news.

The jury found Defendant guilty, and the trial court sentenced her as a prior offender to five years' imprisonment for second-degree assault and four years' imprisonment for leaving the scene of a motor vehicle accident. This appeal followed.

### Discussion

***Point One: Sufficiency of the Evidence of Second-Degree Assault***

In her first point, Defendant argues there was insufficient evidence to support the verdict for second-degree assault because the prosecution failed to prove she acted recklessly. Defendant's argument ignores the standard of review by focusing entirely on evidence favorable to Defendant's position.

When reviewing a claim that the evidence was insufficient to support a conviction, Missouri appellate courts "view the evidence and inferences most

4

favorably to the verdicts, disregard all contrary evidence and inferences, and give the trier of fact great deference." **Wilson**, 333 S.W.3d at 527. The question then "is limited to a determination of whether there was sufficient evidence from which a reasonable trier of fact could have found [the defendant] guilty beyond a reasonable doubt." **State v. Morrison**, 174 S.W.3d 646, 648 (Mo. App. W.D. 2005). "The appellate court's function does not include acting as a 'super juror' with veto powers." **State v. Clark**, 110 S.W.3d 396, 400 (Mo. App. W.D. 2003). Rather, "[t]he determination of a witness'[s] credibility is a function of the jury, and it is within the jury's province to believe all, some or none of a witness'[s] testimony." **State v. Brown**, 996 S.W.2d 719, 728 (Mo. App. W.D. 1999).

As charged in the present case, "[a] person commits the crime of assault in the second degree if he . . . [r]ecklessly causes serious physical injury to another person[.]" § 565.060, RSMo Cum. Supp. (2013). Moreover, "[a] person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4, RSMo (2000).

"Mental state is rarely capable of direct proof." **Brown**, 996 S.W.2d at 729 (quoting **State v. Rowe**, 838 S.W.2d 103, 111 (Mo. App. E.D. 1992)). "Proof of a requisite mental state is usually established by circumstantial evidence and permissible inferences." **Id.** "In determining whether the defendant possessed the requisite mental state, the jury may look at evidence of and draw inferences from the defendant's conduct before the act, during the act and after the act." **Id.** Missouri courts have found recklessness sufficient to support a conviction for

5

second-degree assault when a driver directs his or her vehicle off the roadway and hits a clearly visible object. *See Wilson*, 333 S.W.3d at 527-28. Furthermore, the jury is entitled to consider a defendant's attempts to flee or conceal evidence as providing further evidence of guilt. *State v. Chapman*, 876 S.W.2d 15, 18 (Mo. App. E.D. 1994); *State v. Lockett*, 639 S.W.2d 132, 135 (Mo. App. W.D. 1982). And, "[w]hen proven false, exculpatory statements evidence a consciousness of guilt." *State v. Hibbert*, 14 S.W.3d 249, 253 (Mo. App. S.D. 2000).

In the present case, Victim testified he was at least four feet off the roadway when he was struck. Even after the accident, witnesses explained that when they first arrived at the scene it was light enough to see the entire road without headlights. From this evidence, the jury was permitted to infer that Defendant drove her car off the roadway and that she could see Victim and his horse when she did so. Such conduct was sufficient to support a finding of recklessness. *See Wilson*, 333 S.W.3d at 527-28. Here, however, the jury also had evidence that Defendant left the scene precipitously and attempted to clean the vehicle. These attempts to conceal her involvement demonstrate consciousness of guilt. *See Chapman*, 876 S.W.2d at 18; *Lockett*, 639 S.W.2d at 135.

In support of her argument to the contrary, Defendant relies on facts favorable to Defendant's position and contrary to the jury's verdict. Under our standard of review, they must be disregarded. *See Wilson*, 333 S.W.3d at 527.

6

There was sufficient evidence from which the jury could infer Defendant acted recklessly when she struck Victim and his horse with her vehicle. Defendant's first point is denied.

### *Point Two:  Prosecutor's Statements*

In her second point, Defendant argues the trial court erred in failing to instruct the jury to disregard the prosecutor's comment "that [D]efendant's trial counsel had committed an ethical violation by failing to provide phone records to the [S]tate[.]"  We disagree.

The following additional facts are relevant to the disposition of this claim. During the prosecution's cross-examination of Defendant, the prosecutor asked Defendant to identify the time she made certain phone calls on the night of the collision.  The following exchange ensued:

A.      I'd have to look at my phone records, which I have gladly submitted to you guys, as you know.  Um—but—

Q.      I—actually you did not, so—

A.      Oh, well.

Q.      And if you gave them to your attorney that would actually be an ethical violation on his part not to disclose them, so—

A.      I may have given them in the civil suit, [s]o I apologize.

Q.      Okay.  All right.

A.      That could be my fault for—um, anyway, so your question exactly is?

Q.      My question to you—

[DEFENSE COUNSEL]:  Well, Your Honor, I'm going to object to the suggestion that I'm guilty of an ethical violation here.  If she wants to pro- --prove I have done something unethical in this case, she's welcome to try it.  But I don't want the insinuation to this jury.

THE COURT: I'll sustain the objection.

[DEFENSE COUNSEL]: I've been doing this for almost 50 years without that kind of complaint.

No request was made of the trial court for any further relief. The prosecutor said nothing further about this issue, although defense counsel raised this issue in his closing statement.

This claim is not preserved for appellate review because Defendant received all the relief she requested below. "Missouri courts have been reluctant to criticize a trial court when it has declined to take action on its own motion on behalf of a party during the examination of a witness." *State v. Roper*, 136 S.W.3d 891, 902 (Mo. App. W.D. 2004). "Where an accused's objections to questions are sustained and there is no further objection or motion requesting additional relief, nothing is preserved for appellate review, as the accused has been granted all the relief requested." *State v. Sand*, 731 S.W.2d 488, 492 (Mo. App. S.D. 1987). Here, Defendant objected, and the trial court sustained the objection. Defendant requested no further relief. Defendant's claim is not preserved for appellate review. *See id.*

Defendant's second point is denied.

## *Point Three: Sufficiency of the Evidence of Leaving the Scene of a Motor Vehicle Accident*

In her final point, Defendant claims the evidence was insufficient to support her conviction for leaving the scene of a motor vehicle accident. She claims the evidence showed instead that she "was not aware that she had struck an individual or damaged property, and that upon realizing she had done so, she

8

had immediately contacted law enforcement[.]"  Again, Defendant's argument ignores the standard of review by focusing on evidence favorable to her position at trial.

As laid out above, when reviewing a claim that the evidence was insufficient to support a conviction, Missouri appellate courts "view the evidence and inferences most favorably to the verdicts, disregard all contrary evidence and inferences, and give the trier of fact great deference." *Wilson*, 333 S.W.3d at 527.  The question then "is limited to a determination of whether there was sufficient evidence from which a reasonable trier of fact could have found [the defendant] guilty beyond a reasonable doubt." *Morrison*, 174 S.W.3d at 648. "The appellate court's function does not include acting as a 'super juror' with veto powers." *Clark*, 110 S.W.3d at 400.  Rather, "[t]he determination of a witness'[s] credibility is a function of the jury, and it is within the jury's province to believe all, some or none of a witness'[s] testimony." *Brown*, 996 S.W.2d at 728.

Under Missouri law,

> A person commits the crime of leaving the scene of a motor vehicle accident when being the operator or driver of a vehicle on the highway or on any publicly or privately owned parking lot or parking facility generally open for use by the public and knowing that an injury has been caused to a person or damage has been caused to property, due to his culpability or to accident, he leaves the place of the injury, damage or accident without stopping and giving his name, residence, including city and street number, motor vehicle number and driver's license number, if any, to the injured party or a police officer, or if no police officer is in the vicinity, then to the nearest police station or judicial officer.

§ 577.060.1, RSMo (2000).  As relevant to the present case, "[a] person 'acts knowingly' . . . when he is aware of the nature of his conduct or that those

circumstances exist[.]" § 562.016.3, RSMo (2000). "Mental state is rarely capable of direct proof." **Brown**, 996 S.W.2d at 729 (quoting **Rowe**, 838 S.W.2d at 111). "Proof of a requisite mental state is usually established by circumstantial evidence and permissible inferences." **Id.** "In determining whether the defendant possessed the requisite mental state, the jury may look at evidence of and draw inferences from the defendant's conduct before the act, during the act and after the act." **Id.**

Here, there was substantial damage to Defendant's vehicle with physical evidence of horse hair and manure found after the collision. Furthermore, there were several witnesses who testified it was light enough to see the roadway clearly even after the accident occurred. Victim's body was found half on and half off the roadway. Mr. Rozell testified he established eye contact after the accident with Defendant before she drove away. Under these circumstances, the jury could reasonably infer Defendant saw what she hit and knew she had caused damage and injury.

There was sufficient evidence to support an inference that Defendant had the requisite mental state and knew the collision had caused injury and property damage. Defendant's third point is denied.

### Decision

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, C.J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

DON E. BURRELL, J. – CONCURS

10